130 So.2d 153 (1961)
Floyd H. SMITH Individually and as the Administrator of the Estate of His Minor Child, Gloria Jean Smith, Plaintiff-Appellee,
v.
MASSACHUSETTS BONDING AND INSURANCE COMPANY and American Telephone and Telegraph Company, Defendants-Appellants.
No. 9483.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1961.
*154 Bodenheimer, Looney, Richie & Jones, Shreveport, for Mass. Bonding and Ins. Co.
Barham, Wright & Barham, Ruston, for American Telephone & Telegraph Co.
Meadors, Shaw & Meadors, Homer, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Defendants, Massachusetts Bonding and Insurance Company as insurer of John G. Trahan, and American Telephone and Telegraph Company, appeal from a judgment in favor of plaintiff, Floyd H. Smith, individually and as administrator of the estate of his minor daughter, Gloria Jean Smith.
The accident which gave rise to this litigation occurred while Gloria Jean Smith was a guest passenger in an automobile driven by John G. Trahan. These parties, together with the other occupants, were returning from Louisiana Tech to their homes at Arcadia and Gibsland, Louisiana. While there is naturally some dispute as to the details surrounding the accident, the over-all facts may be generally stated. J. P. Hoover, an employee of the telephone company was driving a company truck westerly on Highway 80. Several miles before Hoover reached the town of Simsboro, he came around a slight curve in the highway and proceeded on a straight stretch for several hundred yards when he decided to make a left turn from the main highway onto a private, unmarked road which led to a company installation nearby. As to exactly how this left turn maneuver was made, there was some conflict, but we find, as did the lower court, that Hoover gave a left turn signal by means of a blinker light on his truck. The evidence further convinces us, at the time he first gave such signal, he was at least one hundred feet from the road with at least two vehicles directly following him in addition to the one being operated by Trahan. The drivers of these vehicles, (whether two or three) noticed the blinker signal of Hoover, and slowed down in order to permit his left turn. As he began his turn, the Trahan vehicle, which was apparently being operated at an excessive rate of speed, was overtaking the other vehicles immediately to the rear of the truck, and the collision resulted. Trahan and his witnesses deny seeing any signal given by the driver of the truck and also deny excessive speed.
The lower court found the accident to have been caused by the concurrent negligence of the left turning truck and the overtaking vehicle. As there was no negligence on the part of Gloria Jean Smith as a guest passenger, a judgment was rendered in her behalf for certain personal injuries, and in favor of her father for certain special damages which we will discuss in more detail later herein. Both defendants have appealed, claiming the accident was due solely to the negligence of the other, and both such defendants have also complained of certain items of damages allowed by the lower court. The plaintiff has neither appealed nor answered the appeal.
We are in complete accord with the findings of the district judge that the accident was caused by the concurrent negligence of the operators of both vehicles. In this connection, we will first focus our attention on the facts which have caused us to find the operator of the left turning vehicle guilty of negligence which was a proximate cause of the accident. While we are willing to concede that he timely gave a signal of *155 his intention to execute a left turn, we do not feel that he thereafter continued the high degree of care exacted of him under the well established jurisprudence of our state.
It is uniformly held by our courts that a motorist before making a left turn must first ascertain by proper observation that the turn can be made in safety, and where he fails to carefully survey his surroundings to ascertain whether traffic conditions warrant such a maneuver, he acts at his own peril and responsibility. In the event of an accident while engaged in such a maneuver and without the exercise of such precaution, he is guilty of negligence. Anderson v. Brackin Motors, La.App. 2 Cir., 1957, 95 So.2d 730, and the numerous cases cited therein.
Counsel for the telephone company stoutly counters the above principle in their brief and oral argument before this court by another well established principle of law as enunciated in the case of Hinton v. Beyl, La.App. 1 Cir., 1960, 122 So.2d 680, that a motorist is not prohibited from making a left turn if the overtaking traffic is of a sufficient distance to permit the completion of the turn prior to the overtaking traffic reaching the turning point; and in judging the distance of the overtaking traffic, the left turning motorist has the right to assume the overtaking motorist is travelling at a lawful speed, and is also maintaining a proper look out. We have no quarrel with the holding in the Hinton case because it is likewise well founded in our jurisprudence as shown by the numerous cases cited in the very able opinion written by our colleague, Judge Landry. However, we feel the instant case is readily distinguishable on its facts. After a review of the record, we agree with the trial judge that Hoover gave a signal in ample time of his intention to turn left; and also glanced in his rearview mirror and concluded such a maneuver could be made in safety at that time. However, he continued down the road some distance with his blinker signal operating, and from the time he first gave his signal until he actually began his left turn, he did not again observe the following traffic through his rearview mirror. He vigorously denied this during the trial, but we agree with the district judge in discounting his denial. The Trahan vehicle was obviously in the passing lane prior to the left turn maneuver as evidenced by the number of vehicles following and the distance between each of them. We, therefore, conclude that the operator of the vehicle owned by the American Telephone and Telegraph Company was negligent in executing the left turn; and that such negligence was a proximate cause of the accident.
We now pass to a consideration of the question of whether the overtaking vehicle being operated by Trahan was also quilty of any negligence, and if so, whether same was a proximate cause of the accident. The operator of this vehicle attempts to place the entire blame on the driver of the telephone truck, in that he contends no signal was given to indicate the left turn; and that such maneuver was also not begun until just an instant before he actually started around the truck. We do not feel the evidence substantiates this version of the accident. As to the left turn signal, the other motorists directly to the rear of the truck saw the blinker light and had slowed down in order to allow the turn. Under these circumstances, we see no reason why Trahan should not have likewise seen the signal. The jurisprudence is replete with cases holding the operator of a following vehicle guilty of negligence by attempting to pass a preceding vehicle travelling in the same direction when the operator of such preceding truck has evidenced his intention to execute his left turn. Paggett v. Travelers Indemnity Company, La.App. 2 Cir., 1957, 99 So.2d 173; Cotton v. American Indemnity Co., La.App. 2 Cir., 1959, 116 So.2d 342. Under the facts of this case, we have no difficulty in agreeing with the lower court that Trahan was guilty of negligence in overtaking and attempting *156 to pass at least three vehicles, and without having seen the left turn indicator which was blinking on the lead truck at the time of such passing maneuver.
Having found no error in the judgment of the lower court establishing the cause of the accident as the concurring negligence of both drivers, we now give consideration to the quantum of damages. The record shows the party injured was eighteen years of age at the time of the accident and a student at Louisiana Tech. She lived with her parents at Gibsland, Louisiana, and daily commuted to her classes by automobile. She was seriously and painfully injured in the accident which rendered her unconscious for a short time. She was immediately taken to the hospital at Arcadia where she was given the usual treatment for such an accident and where she remained for one week. She suffered various bruises and contusions over her entire body. A small scar remains on her face as a result of the accident. However, her principal complaint was a back injury and she was, therefore, referred by her family physician to various specialists for this ailment. She was under the care of an orthopedist in Shreveport for several months, and his evidence was submitted by stipulation in the form of written reports. All of the medical evidence shows without any appreciable amount of dispute that this young lady suffered a rather serious injury to her low back which naturally caused her a great deal of suffering with residual permanent disability estimated as between three and ten per cent by the evidence of the various medical experts. We feel the district judge correctly disposed of the issue of quantum as it related to the personal injuries and we, therefore, quote that portion of his opinion:
"A review of the testimony relating to the personal injuries of Gloria Jean Smith seems to indicate that this young lady was rather severely injured in the accident, that she suffered a cut requiring some stitches to her chin, although the scar itself is barely, if at all, visible, and that she suffered then and has suffered since, considerable pain and discomfort as the results of this automobile accident.
"As a consequence of testimony relating to her pain and suffering, including the headaches which she claims to have suffered and to be suffering, the Court is of the opinion that the sum of Fifteen Hundred and No/100 ($1500.00) Dollars would be adequate to cover this item.
"In addition to the physical pain and suffering which Gloria Jean Smith has undergone, the testimony shows that she suffered an injury to her back, which has been to some extent disabling, which has caused considerable pain and according to the testimony or the report made by the doctors who have examined Miss Smith, the Court is convinced that she has been to some degree curtailed in enjoying athletic type activities and that she will possibly suffer a three to ten per cent residual permanent disability to the lower portion of her back, the Court is of the opinion that she is entitled to recover the sum of Thirty-five Hundred and No/100 ($3500.00) Dollars."
There was an additional award for the benefit of the minor of $849.92 for loss of future earnings of Gloria Jean Smith. This award was based on the testimony adduced during the trial that the young lady was delayed approximately four and one-half months in her graduation from college; that if she had graduated sooner she would have secured a position as a teacher in the public schools and received the amount of wages equal to such an award during the four and one-half month period of time. We feel this portion of the judgment is erroneous and not supported by the evidence. It is well established in our jurisprudence that damages must be proved with legal certainty *157 and speculation, possibility or unsupported probability do not form sufficient basis for such an award. Lewis v. Travelers Indemnity Company, La.App. 2 Cir., 1955, 81 So.2d 178, and cases cited therein. In the instant case, in order to substantiate such an award, it would be necessary for us to assume that Gloria Jean would have graduated; that she would have secured a position teaching school and that she would have received a certain salary. Under our jurisprudence, we feel these are all mere conjecture and should not form the basis of a judgment for damages.
The lower court also awarded the plaintiff, Floyd H. Smith, individually the total sum of $665.19. Of this total, the sum of $328 was for medical and other expenses incurred by him in connection with the accident. This item has not been seriously questioned on appeal and such portion of the judgment is, therefore, affirmed. The remaining $337.50 was awarded to the father for the added expense of sending his daughter to college for an additional four and one-half months. This was apparently predicated upon some testimony that the accident caused the young lady to miss an entire summer semester which ultimately required her to attend school an additional four and one-half months in order to graduate. We do not feel this portion of the judgment is well founded. As previously stated, Gloria Jean was a minor and she remained at home while attending college. In fact the father was not able to testify with any degree of certainty of any additional expense incurred by him as a result of his daughter attending college these extra four and one-half months. It occurs to us that the father was merely fulfilling the duties of any parent to his minor child, which is to render the normal food, clothing and shelter.
For the reasons stated herein, the judgment of the lower court is amended by reducing the award in favor of Floyd H. Smith, individually, from the sum of $665.69 to the sum of $328.19, and by reducing the award in favor of the plaintiff, Floyd H. Smith, in his capacity as administrator of the estate of his minor daughter, Gloria Jean Smith, from the sum of $5,849.92 to the sum of $5,000. Said judgment, as thus amended, is affirmed at appellants' cost.
Amended and affirmed.