|2SHORTESS, Judge.
On April 18, 1992, a collision occurred in Ascension Parish between a 1977 Harley Davidson motorcycle operated by Warren L. Nealy, Jr. (plaintiff), and a 1984 Mercury Marquis operated by Holly M. LeBlanc (Le-Blanc), a minor. Plaintiff sued LeBlanc’s parents, Mr. and Mrs. Murphy LeBlanc, as well as her insurer, State Farm Mutual Automobile Insurance Company[1] (collectively, defendants). Plaintiff alleged in his petition that the accident was caused by the fault of LeBlanc. In the answer to the petition, defendants denied that allegation.
Trial of this matter was scheduled for February 16, 1994. On January 25, 1994, defendants filed an amended answer which added allegations that the accident was caused by plaintiffs conduct and that his award should be reduced by his comparative negligence. Defendants also filed a third party demand against Thomas Mabile, in his capacity as Sheriff of Assumption Parish, and Louisiana State Trooper Brett Lang.
Defendants’ counsel attached to those pleadings a blank order granting leave of court to file them. The trial court did not sign the order as written but instead ordered defendants to show cause on February 9, 1994, why they should be permitted to do so. Defendants also attempted to amend their witness list to add additional witnesses regarding plaintiffs fault. Plaintiff then filed a motion in limine requesting that the court prohibit defendants’ counsel from arguing the negligence of plaintiff.
After a hearing, the trial court denied leave to amend the answer and witness list and file the third party demand. However, the court ruled defendants would be allowed to argue the fault of plaintiff as a defense and to ask the jury to Ranswer interrogatories apportioning fault among plaintiff, Le-Blanc, Lang, and the Sheriffs Department. After trial on the merits, the jury found the accident was caused by the fault of both plaintiff and LeBlanc. It apportioned the fault sixty percent to plaintiff and forty percent to LeBlanc. The jury also fixed plaintiffs damages as $20,000.00 for past, present, and future medical expenses; $3,000.00 for past, present, and future pain and suffering; $1,000.00 for lost earnings; zero for loss of earning capacity; and $7,000.00 for permanent physical impairment and loss of enjoyment of life. The trial court rendered judgment in accordance with the jury verdict, awarding plaintiff $12,400.00 ($31,000.00 reduced by sixty percent for plaintiffs comparative fault).
Plaintiff appeals that judgment, contending the trial court erred in permitting the jury to apportion fault and that the damages awarded were inadequate. Defendants answered the appeal, contending the trial court erred in refusing to allow them to amend their answer.
AMENDMENT OF ANSWER
Defendants’ sole complaint on appeal is that the trial court erred in refusing to allow them to amend their answer. Louisiana Code of Civil Procedure article 1151 provides a defendant may amend his answer *471 once without leave of court within ten days after it has been served, but thereafter he may do so only with leave of court or by written consent of the adverse party. The general rule regarding amendments is that the trial court has much discretion, and its ruling will not be disturbed absent a manifest abuse of discretion which indicates a possibility of resulting injustice. Jeffries v. Estate of Pruitt, 598 So.2d 379, 386 (La.App. 1st Cir.), writ denied, 605 So.2d 1124 (La.1992).
The trial court’s refusal to allow defendants to file an amended answer twenty-two days before trial was not an abuse of discretion in this case, and no injustice resulted since Ldefendants were allowed to put on evidence at trial of plaintiffs negligence. The interlocutory judgment of the trial court denying defendants leave to amend is affirmed.
APPORTIONMENT OF FAULT
Plaintiff contends the trial court erred in permitting a special jury interrogatory addressing the comparative fault of plaintiff and two alleged tort-feasors who were not named as defendants, Trooper Lang, and the Assumption Parish Sheriffs Department, after denying defendants leave to amend their answer. The trial court relied on our supreme court’s decision in Gauthier v. O’Brien, 618 So.2d 825 (La.1993), which held the jury is required to apportion fault between all persons, parties or not, who contributed to plaintiffs loss.
A plaintiff has the burden of proof in a tort action. Plaintiff herein alleged the accident was caused solely by the fault of LeBlanc; defendants denied that allegation in their answer. Plaintiff objected to defendants putting on evidence of plaintiffs fault; the trial court overruled the objection. Had it done otherwise, defendants would have been prevented from presenting a defense because LeBlanc’s testimony regarding how the accident occurred included evidence of plaintiffs fault. Fault cannot be determined in a vacuum.
Louisiana Civil Code article 2323 provides that when contributory negligence is applicable to a claim for damages, the amount of damages recoverable shall be reduced in proportion to the degree of negligence attributable to the plaintiff. Contributory negligence “is applicable” when there is evidence in the record of plaintiffs fault. We find no error in the trial court’s ruling permitting the jury to apportion fault.[2]
IsDAMAGES
In his closing argument, counsel for the LeBlancs told the jury, “If you want to give [plaintiff] something, give him his medicals and a little bit [for] pain and suffering and send him on his way.” The jury did just that. Plaintiff contends, however, that the jury was manifestly erroneous in so doing.
The correct standard for appellate review of a damage award is not manifest error but clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). In reviewing a damage award, we must review the evidence in the light which most favorably supports the judgment and make an articulated analysis of the facts and circumstances peculiar to this particular case and plaintiff. If that analysis discloses an abuse of discretion, i.e., that the award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, we may raise the award only to the lowest amount reasonably within the trier of fact’s discretion. Theriot, 625 So.2d at 1340-1343.
Plaintiff was taken by ambulance from the scene to the hospital emergency room, where he was examined and released. After his release, he returned to the crawfish boil he had been attending just before the accident. He left the crawfish boil early and went home. He testified he was very sore for the next ten days, with pain in his ribs, neck, head, left shin, and right wrist, thumb and knee. He also had intermittent nosebleeds. On the tenth day he went to the emergency *472 room, where the doctor recommended he see a neurosurgeon. His attorney referred him to Dr. Warren |6Williams, whom he saw on May 4, 1992, sixteen days after the accident.
Plaintiff complained to Williams of back pain and nasal drainage. Williams recommended plaintiff undergo a systenogram to help diagnose the nasal problem and a spinal MRI. Plaintiff returned to Williams on June 9, 1992. He reported his back condition had worsened but the nasal drainage had ceased. Williams again recommended an MRI, which was performed on June 17, 1992. The MRI showed midline disk herniation at L4-5 with some resulting central canal stenosis. Williams testified that, more probably than not, this disk herniation was the cause of plaintiffs complaints of low back pain.
Plaintiff was referred to Dr. Raoul Reyes by his attorney. He was seen by Reyes’ associate, Dr. Tyra Huval, on August 6,1992, who prescribed physical therapy. Plaintiff testified that after one painful physical therapy session administered by Reyes’ unlicensed and unregistered “medical assistant,” he did not return.
Plaintiff was seen by Williams on September 3, 1992. He reported to Williams that physical therapy did not help. Williams recommended a decompressive lumbar laminec-tomy and diskectomy in light of plaintiffs failure to improve with conservative care.
Plaintiff did not have the surgery and did not return to Williams until fourteen months later, on November 16, 1993. He continued to complain of pain. Williams stated plaintiff continued to be a surgical candidate. He opined that if plaintiff had the surgery, he anticipated plaintiff would be asymptomatic, but he would still be restricted from performing manual labor. With or without surgery, plaintiff would still be restricted from excessive sitting, standing, bending, or climbing, although the restrictions would be less severe following surgery.
|7At the time of trial, plaintiff had not scheduled surgery or returned to Williams. He testified he could not afford surgery at a private hospital and did not trust the state charity hospital system because his mother had been misdiagnosed at Charity Hospital and almost died as a result.
Dr. Herbert K. Plauche, an orthopedic surgeon, performed an independent medical evaluation of plaintiff at the request of State Farm. Plauche agreed with Williams that plaintiff has a disk herniation that is causing a severe disability of his lower back and that given plaintiffs history, the herniation is probably related to the accident. He stated plaintiffs pain will probably continue into the future, but he would not recommend surgery until all conservative treatment had been exhausted because plaintiff would probably also need a spinal fusion, which is a “very, very big operation with lots of blood loss, lots of possible complications and a very prolonged recovery period.” Plauche stated plaintiff can no longer perform manual labor or drive a truck; he would restrict his sitting, bending, and lifting.
Plaintiffs past medical expenses were approximately $4,000.00, which included only $49.00 in medication. Williams testified back surgery would cost approximately $18,000.00. The jury obviously believed plaintiff would require future medical treatment as it awarded plaintiff $20,000.00 for past, present, and future medical expenses.
Despite this award for medical expenses, the jury awarded plaintiff only $10,000.00 for general damages, including past, present, and future physical and mental pain, permanent physical impairment and disability, and loss of enjoyment of life. Plaintiff received scant medical treatment between the accident and the trial. Following his initial visit to the emergency room on the day of the accident, plaintiff went to the emergency room once, saw Williams four times, saw Huval once, underwent an MRI, and had one physical therapy session Rduring a twenty-two-month period. He took very little pain medication because it made him feel “drowsy, nauseous and rundown.” Plaintiff should not be unduly penalized, however, because of his failure to seek medical care, which he testified was because of his financial situation.
Plaintiff testified his back pain has become progressively worse since the accident. Plauche testified he observed muscle spasm in plaintiffs lower back. Plaintiffs wife, Ju *473 lia B. Nealy, testified plaintiff complains of back pain, which he never did before the accident. He was an avid motorcycle rider before the accident, but he sold his motorcycle following the accident because he was unable to ride it. His injuries have interfered with his ability to have sexual intercourse with his wife. He and his wife liked to fish, and he enjoyed tattooing, applying three to five tattoos per week, but since the accident neither activity is “much fun.”
Given the facts of this ease, we find the jury’s award of $10,000.00 in general damages to be an abuse of its much discretion. We feel $35,000.00 is the lowest amount reasonably within the trier of fact’s discretion in this case for general damages.
Plaintiff also contends the damages the jury awarded him for past lost wages and future loss of earning capacity are inadequate. Plaintiff was thirty-one years old at the time of the accident. He had a very erratic work history, and he presented little evidence of his previous earnings other than his own testimony and pay stubs from his last job. He testified he dropped out of school in the tenth grade and had worked in construction and as a truck driver. He stated he took a voluntary leave of absence from his job at a wholesale plant nursery a month before the accident because his employer did not need him to work as a truck driver and he did not want to do “female’s work” in the greenhouse. He testified he did [gnot need the money, so he relaxed, did a few tattoos, and worked on his motorcycle. He earned $5.00 per hour at the nursery. He testified his employer had promised to recall him to work when a truck driver was needed and to pay him $5.50 per hour, but his employer did not testify to corroborate this fact.
Plaintiffs expert economist, Pat Culbertson, testified that assuming that before the accident plaintiff earned $5.50 per hour and worked forty hours per week, plus overtime at time-and-a-half, for fifty-two weeks per year, his economic loss between the accident and trial was $28,314.00. However, Culbertson’s calculations were based on assumptions that are not supported by the evidence.
An expert’s opinion is only as good as the facts upon which it is based. Quinones v. United States Fidelity & Guar. Co., 93-1648 (La. 1/14/94), 630 So.2d 1303, 1308. Culbertson’s calculations of plaintiffs past wage loss are seriously flawed by erroneous assumptions. Plaintiff was earning only $5.00 per hour, not $5.50. The pay stubs introduced into evidence by plaintiff show only two pay periods in which he was paid overtime, and then he was paid straight time, not time-and-a-half. During the remaining pay periods evidenced by pay stubs, plaintiff worked considerably less than forty hours per week. Furthermore, plaintiffs testimony showed that working fifty-two weeks per year was simply not part of his lifestyle. The only tax information submitted was a W-2 form showing he earned less than $3,000.00 in 1991.
We find that an award of only $1,000.00 for plaintiffs past wage loss is an abuse of the jury’s much discretion. We raise that amount to $5,000.00, which we feel is the lowest amount reasonably within the trier of fact’s discretion in this case.
The jury found plaintiff had no loss of earning capacity. This factual finding was clearly wrong. Even though plaintiff | ipwas not working at the time of the accident, his capacity to earn in the future is impaired, as he can no longer perform manual labor or even comfortably perform sedentary work that requires excessive sitting or bending, such as working as a tattoo artist. In determining an award for loss of earning capacity, what the plaintiff earned before and after the injury does not constitute the measure. Plaintiffs earnings at the time of injury are relevant, but not necessarily determinative, of his future ability to earn. Even an unemployed or sporadically employed plaintiff is entitled to recover for the deprivation of what he could have earned. Hobgood v. Aucoin, 574 So.2d 344, 346 (La.1990); Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 910, writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056.
Because of the jury’s erroneous factual finding, we must make a de novo review of plaintiffs damages for loss of earning capacity. Culbertson testified that assuming plain *474 tiff could return to work at minimum wage one year after trial (approximately three years after the accident), plaintiffs discounted future loss of wages would be $165,890.00. However, for the reasons noted above, Culbertson’s calculations regarding plaintiffs future loss of earning capacity are flawed. We feel $75,000.00 is an appropriate amount to compensate plaintiff for his future loss of earning capacity.
CONCLUSION
For the foregoing reasons, the interlocutory judgment of the trial court denying defendants leave to amend their answer is affirmed. The judgment of the trial court fixing plaintiffs total damages at $31,000.00 is amended to increase that figure to $135,-000.00, which, when reduced by plaintiffs negligence of sixty percent, results in a judgment in favor of plaintiff and against defendants in the sum of $54,000.00. In Inall other respects, the judgment of the trial court is affirmed at defendants’ costs.
AMENDED, AND AS AMENDED, AFFIRMED.

. The petition erroneously refers to "State Farm Insurance Company."

. We need not determine whether the trial court was correct in permitting the jury to hear evidence of the fault of Lang and the Sheriff's Department and in placing them on the jury verdict form because the jury found neither of those parties was at fault.