688 So.2d 1093 (1996)
Wallace C. PIERCE, III and Deborah Pierce, Plaintiffs-Appellants,
v.
Milton M. MILFORD, III, The Calcasieu Parish Sheriff's Office and Wayne McElveen, Defendants-Appellees.
No. 96-92.
Court of Appeal of Louisiana, Third Circuit.
September 25, 1996.
*1094 John Ezell Jackson, Lake Charles, for Wallace C. Pierce, III, et ux.
Michael Steven Beverung, Lake Charles, for Milton M. Milford, III, et al.
Before SAUNDERS, AMY and GREMILLION, JJ.
SAUNDERS, Judge.
Plaintiff-appellant, Wallace C. Pierce, III, maintains that the trial court's award of $30,000.00 for past and future lost earnings capacity inadequately compensates him for the future lost earning capacity attributable to defendants' negligence. Additionally, he contends that the trial court overlooked his damages for vocational rehabilitation expenses. We award $5,336.00 to correct the trial court's error in neglecting to compensate vocational expert Richard Marron for his efforts; however, a majority of the court finds no abuse of discretion in the award for lost earning capacity.

FACTS
This personal injury action arises from an automobile accident that occurred on October 27, 1992. The vehicle in which Mr. Pierce was a guest passenger was struck by an automobile driven by Deputy Milton M. Milford, III.
Liability is conceded. Mr. Pierce sustained neck, back, and left shoulder injuries. His neck pain resolved about seven months after the accident, but his shoulder injury did not heal, requiring a September 1993 arthroscopic surgery. This surgery was not entirely *1095 successful and Mr. Pierce was left with a 10% permanent impairment to his left upper extremity following the operation.
Mr. Pierce filed suit for damages arising from the accident as did Mrs. Pierce, for loss of consortium. The matter was tried on September 5, 1995. Following the bench trial, Mr. Pierce was awarded general damages of $76,000.00 and "past, present, and future impairment of earning capacity" in the unapportioned amount of $30,000.00. Mr. Pierce also was awarded past medicals of $12,267.11 and future medicals of $3,250.00.[1]
From this judgment, only Mr. Pierce appeals. He seeks an increase in quantum. As noted at the outset, his appeal is limited to the questions of whether the trial court abused its discretion in awarding no more for Mr. Pierce's future lost earning capacity, and in failing to cast defendants for certain vocational rehabilitation expenses.
Defendants' answer to plaintiff's appeal disputes each of the components of relief awarded plaintiffs, but their brief is limited to addressing Mr. Pierce's argument for future lost earning capacity. By failing to introduce tax and other documentation of his past earnings, they argue that plaintiff failed to prove his case for lost earning capacity.

FUTURE LOST EARNING CAPACITY
[1] Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
Folse v. Fakouri, 371 So.2d 1120, 1124 (La. 1979). In accord, Hobgood v. Aucoin, 574 So.2d 344 (La.1990); Batiste v. New Hampshire Ins. Co., 94-1467, (La.App. 3 Cir. 5/3/95); 657 So.2d 168, writ denied, 95-1413 (La. 9/22/95); 660 So.2d 472. Even an accident victim who is "unemployed at the time of the injury ... is entitled to an award for impairment or diminution of earning power." Folse, 371 So.2d 1120, 1123.
The question is whether Mr. Pierce was adequately compensated for his future lost earning capacity.
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition. Finnie v. Vallee, 620 So.2d 897 (La.App. 4 Cir.), writ denied, 625 So.2d 1040 (La.1993).
The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident. Finnie, 620 So.2d at 901.
Batiste, at pp. 3-4, 657 So.2d at 170.
It was not until Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), that damages for lost earning capacity became separately stylized as such.[2]Coco involved an injured twenty year old employee who at the time of his injury could only prove a history of annual earnings of $2,500.00 or one-half of the $5,000.00 the jury awarded plaintiff for his future lost annual earning capacity. The supreme court reinstated the jury award, notwithstanding an absence of historical evidence, because plaintiff was entitled to "full indemnification" under La.Civ.Code art. 2315:

*1096 But the full indemnification to which an injured party is entitled under Article 2315 (Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971)) includes damages for decreased earning capacity which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from his income prior to the injury.
Coco, 341 So.2d at 338. The court in Coco concluded that it would be unfair to penalize on the basis of youth, an uncontrollable factor, an industrious worker who more probably than not one day could look forward to greater earnings but for the intervening accident.[3]
Here, the principal thrust of defendants' case is that plaintiff's failure to present tax records and other documentation to corroborate his actual past wages defeats his present claim for future lost earning capacity. This is an erroneous oversimplification of the law. While corroborative evidence is always helpful, it is not essential:
[A] claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim. This may even consist only of the plaintiff's own reasonable testimony, if accepted as truthful; although of course the better practice is to introduce corroborating testimony. See, e.g., Charles v. Phoenix Insurance Co., 229 So.2d 467 (La.App. 3 Cir.1969); Hughes v. New Orleans Public Service, Inc., 221 So.2d 331 (La.App. 4 Cir.1969); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App. 4 Cir.1966); Colton v. Hartford Fire Ins. Co., 135 So.2d 489 (La.App. 2 Cir.1961).
There are, however, other intermediate decisions, similar to the present, which disallow any award for loss of earnings in the absence of records corroborating the plaintiff's testimony. These decisions seem to indicate that such testimony, no matter how unsuspicious nor how consistent with proven disability, can never by itself prove an earnings-loss with reasonable certainty. See, e.g., Craig v. Burch, 228 So.2d 723 (La.App. 1 Cir.1969); Radecker v. Phillips, 223 So.2d 468 (La.App. 4 Cir.1969); Smith v. Brekeen, 216 So.2d 90 (La.App. 1 Cir. 1968).
In requiring this artificial prerequisite for recovery for loss of earnings, the courts so holding overlook fundamental general principles regulating the burden of proof and the award of damages in tort cases.
Jordan v. Travelers Insurance Company, 245 So.2d 151, 154-55 (La.1971).
It is not surprising that trial courts in this state occasionally have been confused as to the burden a plaintiff must shoulder to recover for lost earning capacity. Indeed, on this very crucial question, the appellate courts of this state have offered varying guidance notwithstanding the guidance of Jordan and the other authority set forth above. In cases where individuals have failed to introduce evidence that was available to prove lost earning capacity, courts on occasion have used language approximating the following:
In order to support an award for loss of earning capacity, the plaintiff must present sufficient evidence to allow the court to calculate the amount of the award with some measure of reasonable certainty.
Mormon v. Stine, Inc., 95-615, p. 3 (La.App. 3 Cir. 11/2/95); 664 So.2d 600, 603, citing Naman v. Schmidt, 541 So.2d 265 (La.App. 4 Cir.1989). However, the Louisiana Supreme Court has never applied this standard for claims for diminished earning capacity. In fact, as emphasized above, that court expressly repudiated this very notion in Jordan v. Travelers Insurance Co., 245 So.2d 151, after a court of appeal had attempted to impose the higher burdenironically in an effort to repudiate the practice of requiring a plaintiff to prove his case by a weightier burden, beyond a reasonable doubt. We quote from the opinion of the intermediate court in Jordan:

*1097 We now turn our attention to the crucial issue in this instant matter and that is whether or not the negligent act of the defendant also brought about the subsequent mental residuals endured by plaintiff. For plaintiff to recover for these injuries he must establish that there is a causal relation between the two and that the injuries complained of did in fact result from the accident. In shouldering this burden of proof, probabilities and possibilities are not enough; however, neither is plaintiff required to prove this causal relation beyond a reasonable doubt. The amount of proof required, therefore, involves a question of degree. The answer thereto is one of reasonableness. This is so because not all injuries are susceptible of proof by testimony that is beyond legitimate quandary. It is for this reason that our jurisprudence has provided that the legal requirement for the burden of proof is satisfied when plaintiff has established to a reasonable certainty that the negligent act caused his injuries. To prove less is not enough but to require more would make a plaintiff's task an unreasonable one and in many cases impossible.

Jordan v. Travelers Insurance Co., 231 So.2d 678, 684 (La.App. 1 Cir.1970) (Emphasis added).
The appellate court in Jordan, although subsequently overruled by the supreme court, was not altogether without precedent in applying this erroneous standard. Indeed, citing Lewis v. Travelers Indemnity Company, 81 So.2d 178 (La.App. 2 Cir.1955), one court even went so far as to suggest that "[i]t is well established in our jurisprudence that damages must be proved with legal certainty and speculation, possibility or unsupported probability do not form sufficient basis for such an award." Smith v. Massachusetts Bonding and Insurance Co., 130 So.2d 153, 156-57 (La.App. 2 Cir.1961) (Emphasis added). Cf. Stevens v. Dowden, 125 So.2d 234 (La.App. 3 Cir.1960).
While there is some legitimate question as to whether the higher standard ever was "well established,"[4] there is no question but that it was expressly repudiated by the supreme court in Jordan:
In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence.
In describing burden of proof, the courts sometimes speak of proof to a "reasonable certainty" or to a "legal certainty"; or of proof by evidence which is of "greater weight" or "more convincing" than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant's tort with "a fair amount of certainty". Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.
See: Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas and New Orleans Railroad Co., 243 La. 829, 147 So.2d 646 (1962). See also: Sanders, The Anatomy of Proof in Civil Actions, 28 La. L.Rev. 297 (1968); James, Civil Procedure, Section 7.6 at pp. 250-51 (1965); Prosser on Torts, Section 41 at pp. 245-46 (3d ed., 1964); McCormick on Evidence, Section 319 at pp. 676-77 (1954); Malone, Louisiana Workmen's Compensation, Section 252 at pp. 293-94 (1951).
Jordan, 245 So.2d at 155. (Emphasis ours)
Thus it would seem that the supreme court cases of Jordan, Coco, and Folse taken together stand for the proposition that a party claiming lost future earnings or future lost earning capacity need not prove damages by more than a preponderance of the evidence, *1098 and that while corroborative evidence is always helpful, its introduction is not necessarily required to establish future lost earnings or earnings capacity. While it is true that in the twenty years since Jordan some tribunals have inadvertently reopened the door to the suggestion that proof by a preponderance is insufficient,[5] there have been no changes in the law or supreme court jurisprudence since Jordan, Coco, and Folse were rendered. Therefore, to this day, lost earning capacity must be proven by a preponderance of the evidence and, given sufficient evidence, even a plaintiff who "has not suffered a loss of income" after an accident "compared to his earnings prior to the accident" is entitled to compensation if he can prove that his "ability to earn a living is impaired" by delict. Hobgood v. Aucoin, 574 So.2d 344, 347 (La.1990).
The fact that in such instances a damages award cannot be fixed with precise certainty matters not, as the usual rules for assessing delictual responsibility upon the tortfeasor apply to such losses:
Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited. This latter principle is also applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount. Goode v. Hantz, 209 La. 821, 25 So.2d 604 (1946); Clouatre v. Toye Bros. Yellow Cab Co., 193 So.2d 344 (La.App. 4 Cir.1966), certiorari denied 250 La. 270, 195 So.2d 147 (1967); Hidalgo v. Dupuy, 122 So.2d 639 (La.App. 1 Cir.1960), certiorari denied.

Jordan, 245 So.2d at 155.
This is because any effort to calculate a tort victim's future earnings is "at best speculative and cannot be made with absolute certainty." Cornett v. State Through W.O. Moss Hosp., 614 So.2d 189, 196 (La.App. 3 Cir.), writ denied, 617 So.2d 906, 907 (La. 1993), citing Robinson v. Graves, 343 So.2d 147 (La.1977); King v. Louviere, 524 So.2d 65 (La.App. 3 Cir.1988); and Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3 Cir.1985).
With this history in mind, we turn to the present appeal to determine whether the trial court's award of $30,000.00 for "past, present and future impairment of earning capacity" is fair to both litigants without being overly oppressive to either. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Freeman, 467 So.2d 194 (La.App. 3 Cir.1985). Unless the record demonstrates that the trial court abused its much discretion in its award for loss of earnings capacity, as a court of appeal we should not disturb or secondguess its award. Coco, 341 So.2d 332; Robinson, 343 So.2d 147 (La.1977) and other cites therein.
Initially, we observe that there is no question but that defendants are legally answerable to Mr. Pierce for future lost earnings capacity. Mr. Pierce was, prior to the accident, a good mechanic with readily marketable skills accumulated over a twenty year period that enabled him to obtain employment practically at will. Boyd Weeks, Robert Weeks, Charles Weeks, Michael Gelt, and Kirby Manuel, all former co-workers, attested to this fact. It was on the basis of this professional respect that Michael Gelt introduced plaintiff to his current light mechanic position at Harlow Lawn Mower Service; and while plaintiff's work habits were far from perfect, even occasionally leading to his dismissal, it is irrefutable that prior to his injury, Mr. Pierce's skills were in demand, as evidenced by the fact that Charles Weeks, the owner of Lakeshore Conoco, hired plaintiff "right back" after he occasionally quit or was fired.
The marketability of Mr. Pierce's skills before the accident was attributable not only *1099 to his years of experience and mechanical prowess but to his great physical strength. Before the accident, this strength enabled plaintiff to complete virtually any job more quickly than prescribed by the "book rate" and without assistance.
Plaintiff's ability to market himself is diminished without this strength, however. Prospective employers prefer to hire only the most productive mechanics available, a harsh reality attributable to the industry practice of compensating an auto mechanic strictly on the basis of the speed with which he turns work out.
Most importantly, however, Mr. Pierce's disability prevents him from working as quickly as his peers. Diminished productivity entitles the aggrieved to an award for lost earning capacity to the extent causation and severity are established. See, e.g., Hobgood, 574 So.2d 344. As plaintiff notes in his brief, the industry practice is to bill the estimated number of hours for each job, the "book" rate, rather than the number of hours actually spent doing the job, explaining why a partially disabled small engine mechanic billing at a stated $15.00-$17.50 hourly "book" rate might only earn $300.00 or $350.00 per thirty-five hour week. Unlike the other mechanics who work more quickly than the "book" assumes, this plaintiff frequently requires more than one hour to complete a billable hour's worth of work. Hence, while it may be true, as defendants suggest, that plaintiff's hourly "book" rate has not decreased greatly in his new profession, this is small consolation, given the fact that plaintiff's compensation, tied to his production, has plummeted, even before taking into consideration the fact that plaintiff's disability robs him of the ability to perform the small engine repairs that pay higher hourly rates.[6]
Plaintiff's injuries have also reduced his ability to fend for himself as a "shade tree" auto mechanic. Without the means to hire assistants to help him with some of the more taxing assignments he formerly could perform independently, plaintiff has been required to turn work away, resulting in a diminution of moonlight business.
Moreover, there is little question but that plaintiff's occupational losses are permanent. Mr. Pierce's shoulder injuries have resulted in a 10% permanent impairment to his left upper extremity. As the trial court correctly observed, "Mr. Pierce's injury and attendant pain will be with him the rest of his life." The record overwhelmingly supports the conclusion that Mr. Pierce will never again be in a position to perform the heavy mechanical work he was physically capable of performing pre-injury or that Mr. Pierce will forever be physically uncompetitive in the market place for automobile mechanics. The evidence indicates that plaintiff is unable to earn his pre-accident wage or to continue to work in his same job. Cf. Budd v. State Farm Mut. Auto. Ins. Co., 94-818 (La.App. 3 Cir. 2/15/95); 650 So.2d 429, wherein plaintiff earned more than his pre-accident wage and continued to work in his same job.
At the same time, the record clearly shows that plaintiff's earning capacity has not been entirely vanquished. Plaintiff has been able to obtain some work repairing lawn mowers, weed eaters, and the like, although this work is more seasonal and offers plaintiff less hourly compensation than his old work.[7]
Having held that Mr. Pierce clearly established a permanent partial disability, we finally address the question of whether the trial court's award of lost earning capacity constituted an abuse of its discretion.
In support of his case, plaintiff introduced the testimony of an expert economist, Dr. Charles Bettinger. Dr. Bettinger estimated plaintiff's lost earning capacity at $330,180.00. His figure was obtained by multiplying:
$8.75 Mr. Pierce's estimated hourly earning loss[8]; and *1100 2,080 hours (the United States Department of Labor's definition of the number of hours a full time employee works in a year); and
20 years (the number of work years Dr. Bettinger estimated the 42 year old Mr. Pierce could look forward to, according to the U.S. Department of Labor's Work Life Tables).
This estimate, as plaintiff is quick to point out, does not make allowances for fringe benefits or increases in productivity.
Defendants' position is that plaintiff failed to prove any lost future wages. Primarily, they attack Dr. Bettinger's first and third assumptions. First, they allude to expert testimony suggesting that plaintiff could have continued to engage in auto mechanic's work. In the alternative, citing Mormon, 664 So.2d 600 and Budd, 650 So.2d 429, defendants maintain that plaintiff failed to make his case for lost earning capacity and the trial court erred in concluding otherwise since plaintiff failed to produce income tax returns, receipts, ledgers, or any other similar supporting documentation reflecting income.
In support of their first argument that plaintiff, in fact, is not disabled from performing his old job, defendants contest the factual findings of the trial court, which concluded to the contrary. This argument relies on the findings of their expert in occupational therapy, Ray Menard. Because Mr. Menard observed that the U.S. Department of Labor's Dictionary of Occupational Titles lists the occupation of auto mechanic as one imposing medium physical demands, and because in his opinion plaintiff could perform a medium level of physical demand, defendants maintain that plaintiff must be able to return to his old profession.
We do not accept this line of reasoning. For one thing, it ignores the clearly proven facts that plaintiff's earning capacity is tied directly to his individual level of production, and that plaintiff will forever be far less productive than he was before the accident. For another, acceptance of this position would require that we ignore the fact that unlike plaintiff's expert, who concluded that plaintiff could not return to his old work, defendants' expert did not actually visit work sites typical of those in which plaintiff actually worked. "An expert's opinion is only as good as the facts upon which it is based." Quinones v. United States Fidelity & Guar. Co., 93-1648 (La. 1/14/94), 630 So.2d 1303, 1308; Nealy v. LeBlanc, 94-1057, p. 9 (La. App. 1 Cir. 4/7/95); 654 So.2d 468, 473.
In this case, affecting this plaintiff, the trial court was presented with the conflicting testimony of two experts, one called by the plaintiff who actually visited plaintiff's work site and observed firsthand the physical requirements occasioned by job responsibilities of persons in plaintiff's occupation, and another whose conclusions were abstractly based. The trial court determined the former to be more credible. We cannot say that it erred in doing so. The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony unless the stated reasons of the expert are patently unsound. Lirette v. State Farm, 563 So.2d 850 (La.1990); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
At the same time, we cannot say that the trial court erred in refusing to award the full $330,180.00 figure suggest by Dr. Bettinger. Although the record clearly supports the notion that plaintiff now earns about $8.75 per hour less than he did before the accident, it comes nowhere near suggesting that plaintiff would have worked 2,080 hours per year (forty hours for fifty-two weeks) but for the accident. In fact, the record indicates that plaintiff, in all probability, would have continued to work sporadically regardless of whether he had been victimized. Second, the record does not show that plaintiff would continue to receive top dollar but for the accident, since Mr. Pierce did not demonstrate that he had the initiative to obtain the computer training that is critical to diagnosing and repairing newer automobiles. Finally, the record is inconclusive as to whether this plaintiff has a twenty (20) year prospective work life expectancy, as this figure was premised upon Dr. Bettinger's assumption that Mr. Pierce was a high school graduate, *1101 which is not altogether accurate since Mr. Pierce left high school in the 10th grade.[9]
In the final analysis, a majority of the court is unable to conclude that the trial court erred in awarding plaintiff only $30,000.00 for his lost earning capacity. While it is undoubtedly true that the accident robbed plaintiff of the physical capacity to obtain the greater earnings of an automobile mechanic, Mr. Pierce has not established that he would have earned nearly the magnitude of wages or possessed nearly the earning capacity he now claims to have lost.
In fact, the greatest culprits to Mr. Pierce's case for the relief he now seeks are his erratic work and educational history. While it is true, as Mr. Pierce suggests, that he has held a number of positions over his work life, it is obvious that he held each only for a relatively short period of a few months to a few years, and even these periods seem to have been marred by frequent tardiness and absences without excuse or prior notice. Additionally, we observe that Mr. Pierce reported no income for the years 1989 through 1992 due, according to his spouse, to Mr. Pierce's having earned insufficient income to file income tax returns.
Likewise, the record suggests that Mr. Pierce's surplus hours before his injury were not filled with educational or vocational attainment. After Mr. Pierce dropped out of high school long before the accident, he attended Sowela Technical Institute for a period, but dropped out there as well.
Even taking into account the expansive definition of lost earning capacity set forth in Folse, 371 So.2d 1120, and measured by the Batiste and Finnie factors set forth at the outset, a majority of this court is unable to go so far as to conclude that the trial judge abused its much discretion in awarding plaintiff no more than $30,000.00 for this element of relief.

VOCATIONAL REHABILITATION
Finally, plaintiff seeks recompense for vocational rehabilitation expenses of $5,336.00 he incurred. We have reviewed the record and it confirms that rehab specialist, Mr. Richard Marron of Tioga, immersed himself in plaintiff's case, reviewing plaintiff's medical reports and interviewing plaintiff before performing a vocational evaluation, a wage market survey, on-site studies, and a vocational evaluation before testifying before the trial court as a court-accepted expert in vocational evaluation and rehabilitation. The trial court apparently overlooked this expense when it set forth the expert fees it at the conclusion of trial. Accordingly, we correct that error on appeal.

DECREE
Plaintiff, Wallace Pierce's, award for present, past, and future lost earning capacity is affirmed, with one judge dissenting, and the judgment of the trial court reversed in part to award plaintiff $5,336.00 for vocational evaluation and rehabilitation expenses, plus legal interest, at defendant's cost. In all other respects, the judgment of the trial court is affirmed, at plaintiff's cost.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
AMY, J., concurs and assigns written reasons.
SANDERS, J., specially dissents in part and assigns reasons.
SAUNDERS, Judge, dissenting in part.
While the majority is willing to defer to the trial court's award of damages, finding no abuse of discretion in its factual assessment, I am of the opinion that the trial court (like other tribunals, including those mentioned in the majority opinion) too conservatively construed the full measure of relief to which plaintiff was entitled for lost earning capacity. In my view the trial court's legal error jettisoned from its quantum assessment the usual deference to be allotted to the trier of fact.
*1102 This is not to say that I would have joined the majority's quantum assessment in this case even under the Youn/Ambrose guidelines. I agree with the majority that the trial court did not err in finding that plaintiff has not demonstrated that his poor prospects are wholly or even mainly attributable to the accident, given plaintiff's proven indifference to wage earnings. Nonetheless, even taking into account this possible human frailty, I believe that had the trial court taken into adequate consideration plaintiff's physical condition before and after the accident, the fifteen to twenty years remaining of his work life, and his reduced employment opportunities, all elements proven by an overwhelming preponderance of the evidence, $50,000.00 for plaintiff's fifteen to twenty years of lost earnings capacity would seem to have been the very lowest reasonable amount that the trial court could have awarded Mr. Pierce under the circumstances. Coco, 341 So.2d 332; Schexnayder v. Carpenter, 346 So.2d 196 (La. 1977).
AMY, Judge, concurring.
I concur with the result reached by the majority in this case, but I write separately to discuss the plaintiff's burden of proof for a claim of future earning capacity. Defendants argue that plaintiff's failure to offer tax records and other documentation to corroborate his testimony defeats his claim for future lost earning capacity. I agree with the majority that this is not automatically so. Additionally, in my opinion it was not clearly wrong under the facts of the present case for the trial court to have concluded that the plaintiff proved entitlement to an award for lost earning capacity. However, in this case I note that there is other evidence in the record which corroborates plaintiff's testimony and supports the trial court's award.
The majority finds the case of Jordan v. Travelers Insurance Co., 245 So.2d 151 (La. 1971) controlling in the present case. I agree. This case, like Jordan, involves a situation where evidence to support a claim for loss of earnings is in the form of plaintiff's own testimony, as corroborated by his employer and/or co-workers. Jordan provides that corroborating testimony, although preferable, is not always necessary. In Jordan, the Louisiana Supreme Court did not remove the requirement that testimony provide a degree of detail or specificity as to the value of the lost earnings. On the contrary, our highest court in Jordan reviewed the factual evidence presented to conclude that the plaintiff had, by a preponderance of the evidence, proved a claim for loss of pre-trial and future earnings.
However, the majority opinion then notes several appellate court cases where the language "reasonable certainty" was used in discussing the burden of proving future lost wages. The majority states that this "higher burden" of proof has never been applied by the Louisiana Supreme Court for such claims. But, in my view, the terminology "reasonable certainty" is not a higher burden of proof that has been imposed by the appellate courts; it is a descriptive phrase used by the courts in the general discussion of what constitutes proving a fact by a preponderance of the evidence in a claim for future lost wages.
In discussing the plaintiff's burden of proof, the supreme court explained:
In describing this burden of proof, the courts sometimes speak of proof to a "reasonable certainty" or to a "legal certainty"; or of proof by evidence which is of "greater weight" or "more convincing" than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant's tort with "a fair amount of certainty". Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.

Jordan, 245 So.2d at 155 (La.1971). (Emphasis added)
It is well settled that a plaintiff must prove by a preponderance of the evidence any element of damage in a tort case. Davis v. State Farm Mutual Automobile Insurance Company, 590 So.2d 714 (La.App. 3 Cir. 1991); Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3 Cir.1990). Proof is by preponderance *1103 of the evidence when it shows that a fact sought to be proved is more probable than not. Veazey v. State Farm Mutual Auto Ins., 587 So.2d 5 (La.App. 3 Cir.1991). A plaintiff's detailed and uncorroborated testimony as to loss of earnings may, if reasonable and accepted by the trier of fact, support an award for such damages. Mormon v. Stine, Inc., 95-615 (La.App. 3 Cir. 11/2/95); 664 So.2d 600. But, while the absence of independent corroborating evidence may not be fatal to plaintiff's burden of proving damages, lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award of damages. Gulf American Industries v. Airco Industrial Gases, 573 So.2d 481 (La.App. 5 Cir.1990); Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La.App. 3 Cir.), writ denied, 413 So.2d 909 (La.1982). To recover, a plaintiff must show proof to reasonably establish his claim. Weber v. Brignac, 568 So.2d 1129 (La.App. 5 Cir.1990). Accordingly, damages based on mere speculation and conjecture are not allowed. Smith v. Louisiana Farm Bureau Casualty Insurance Company, 603 So.2d 199 (La.App. 3 Cir.), writ denied, 605 So.2d 1115 (La.1992); Coon v. Placid Oil Co., 493 So.2d 1236 (La.App. 3 Cir.), writ denied, 497 So.2d 1002 (La.1986).
Therefore, in my view, the language "reasonable certainty" in the context of proving lost wages, does not mandate a new, higher, artificial burden of proof. Instead, in my opinion, "reasonable certainty" simply and appropriately illustrates that a plaintiff must prove future lost wages by a preponderance of the evidence. While a plaintiff's own testimony may be enough to sustain this burden, the plaintiff must give details and specifics as to his claim, so that, taken as a whole, the claim is proved to be more probable than not. If the plaintiff fails, his claim for damages will be speculative, not "reasonably certain" and, therefore, not proven by a preponderance of the evidence.
NOTES
[1] The trial court also awarded Mrs. Pierce $4,000.00 for loss of consortium and $214.02 for her medical expenses.
[2] See, e.g., Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968), which speaks of loss of future earnings.
[3] This is also why in Batiste, 657 So.2d 168, we observed that "[w]hile the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity." Id. at p. 3; 657 So.2d at 170.
[4] Smith, 130 So.2d 153, actually cited Lewis, 81 So.2d 178, and other cases cited therein, but no other cases are cited therein which stand for the proposition!
[5] For instance, Chaney v. Our Lady of Fatima Cath. Church, 391 So.2d 501 (La.App. 3 Cir. 1980); Watson v. Hartford Acc. & Indem. Co., 339 So.2d 480 (La.App. 2 Cir.1976), writ denied, (La. 1977); and the more recent cases of Naman v. Schmidt, 541 So.2d 265 and Holman v. Reliance Ins. Companies, 414 So.2d 1298, 1313 (La.App. 2 Cir.), writ denied, 420 So.2d 164 (La.1982), all contain language that might be misconstrued this way.
[6] The record shows that plaintiff's injury has left him unable to repair riding lawn mowers and other heavier engines, jobs billed at premium "book" rates.
[7] While auto mechanics are generally paid one-half of the $37-38.00/hour billable rate, persons doing small engine repairs are typically paid one-half of the lesser amount of $30-35/hour.
[8] The difference between an auto mechanic's estimated $17.50 hourly rate and the approximately $8.75 per hour plaintiff is earning as a small engine repairman.
[9] By the same token, defendants' expert testimony suggesting that plaintiff's injuries may have cost him a maximum 12.2 years of earnings ignores the fact that plaintiff had successfully completed some two quarters of a two year curriculum in mechanics at Sowela Technical Institute.