NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1224

KATHY A. DARBONNE, ET UX.

VERSUS

BERTRAND INVESTMENTS, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-10530-L
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED AS AMENDED.

Richard Joseph Petre, Jr.
Onebane Law Firm
P. O. Drawer 3507
Lafayette, LA 70502-3507
(337) 237-2660
COUNSEL FOR DEFENDANTS-APPELLEES:
    Carolyn Bertrand
    Earl Bertrand
    Bertrand Investments, Inc.

**Chuck David Granger**
**Attorney at Law**
**P. O. Drawer 1849**
**Opelousas, LA 70571-1849**
**(337) 948-5000**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Kathy A. Darbonne**

**PICKETT, Judge.**

The appellant, Kathy Darbonne, appeals the judgment of the trial court, based on a jury's verdict, that apportioned Mrs. Darbonne with sixty-percent fault in a fall that occurred on property owned by the defendant, Bertrand Investments, Inc. Mrs. Darbonne also appeals the amounts awarded for general damages, loss of earning capacity, future medical expenses, and past lost wages.

### STATEMENT OF THE CASE

On the evening of May 31, 2007, Mrs. Darbonne called her friend, Charlene Richard. Mrs. Richard was at the Swinging Door Lounge with co-workers, celebrating the last day of school. Mrs. Richard felt she was too intoxicated to drive home. Mrs. Darbonne offered to pick her up from the bar and bring her home. Mrs. Darbonne drove to the bar with her fourteen-year-old son Donovan.

When they arrived at the Swinging Door Lounge, Mrs. Darbonne went inside to get Mrs. Richard. While inside, she met a mutual friend, Sheila Laverne. Mrs. Laverne had ridden to the bar with someone else and had asked Mrs. Darbonne to take her home. Mrs. Darbonne agreed. Mrs. Laverne bought a beer for Mrs. Darbonne.

Mrs. Darbonne then left the bar through the front door while Mrs. Laverne and Mrs. Richard left through the back door where Mrs. Richard had parked her car. Mrs. Darbonne instructed Donovan to follow the ladies to Mrs. Richard's house. Mrs. Darbonne then began to walk around the building to Mrs. Richard's vehicle. On her way around the building, Mrs. Darbonne failed to negotiate a curb in front of the convenience store that was next door to the bar. She fell and injured her foot.

As a result of this incident, Mrs. Darbonne required two surgeries to repair her broken foot. At the time of trial, she still claimed to suffer from swelling and pain. She also claimed that because of the extensive amount of time spent in walking boots and casts, she began experiencing lower back pain.

Mrs. Darbonne and her husband filed suit against the owner of the convenience store, Bertrand Investments, Inc., (Bertrand) and its principals, Carolyn and Earl Bertrand, for damages. Mrs. Darbonne claimed that Bertrand failed to keep its parking lot in a reasonably safe condition. Specifically, Mrs. Darbonne claimed that the parking lot was too dark, and her accident could have been avoided if it had been well-lit.

During the trial, Mr. Darbonne's loss of consortium claim was dismissed. Following a trial, the jury reached a verdict finding Mrs. Darbonne sixty percent at fault and Bertrand forty percent at fault. The jury also made the following damage awards:

| Past medical expenses | $100,000.00 |
|---|---|
| Future medical expenses | $0 |
| Past lost wages | $ 38,000.00 |
| Future lost wages/loss of earning capacity | $0 |
| Past, present, and future physical and mental pain and suffering | $ 50,000.00 |
| Loss of enjoyment of life | $  5,000.00 |

The trial court signed a judgment in conformity with the jury's verdict on December 16, 2010. Mrs. Darbonne now appeals that judgment.

### ASSIGNMENTS OF ERROR

Mrs. Darbonne asserts two assignments of error:

1. The jury erred in assigning sixty percent of the fault to plaintiff, Kathy Darbonne, and forty percent of the fault to the defendant, Carolyn Bertrand and Bertrand Investments, Inc.

2.    The jury erred in awarding only $50,000.00 in past, present, and future physical and mental pain and suffering, only $5,000.00 in loss of enjoyment of life, in not awarding loss of earning capacity, not awarding future medical expenses, and awarding only $38,000.00 in past lost wages.

## DISCUSSION

**Liability and Allocation of Fault**

The supreme court succinctly stated the standard of appellate review of a jury's findings of fact, such as liability, in *Fontenot v. Patterson Insurance*, 09-669, pp.8-9 (La. 10/20/09), 23 So.3d 259, 267:

> In reviewing the factual findings of a trial court, we are limited to a determination of manifest error. *Hill v. Morehouse Parish Police Jury*, 95-1100, p. 4 (La.1/16/96), 666 So.2d 612, 615. It is well settled that an appellate court may not disturb a jury's finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. *Syrie v. Schilhab*, 96-1027, p. 4 (La.5/20/97), 693 So.2d 1173, 1176. An appellate court must do more than simply review the record for some evidence which supports or controverts the findings. *Stobart v. State of La., through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). It must instead review the record in its entirety to determine whether the factual findings were clearly wrong or manifestly erroneous. *Id.*
>
> Significantly, the issue to be resolved is not whether the jury was right or wrong, but whether its conclusion was reasonable. *Id.* Thus, this Court, after a full review of the record, may not reverse reasonable findings, even if we had weighed the evidence differently sitting as the trier of fact. *Siverd v. Permanent General Ins. Co.*, 05-0973, p. 3 (La.2/22/06), 922 So.2d 497, 500.

Bertrand has not appealed and does not contest the trial court's finding that it was liable because of its failure to have enough lighting in its parking lot at night, when the convenience store was closed but the two adjacent bars remained open. The critical inquiry in our review is whether the jury erred in finding that Mrs. Darbonne was liable, in part, for her injuries.

In her brief to this court, Mrs. Darbonne argues about the merits of the conclusions of the two engineering experts who testified about the lighting conditions, one for the plaintiff and one for the defendant. While the engineering

3

evidence showed that it may have been difficult to see the curb, perhaps the most damaging testimony was given by Mrs. Laverne, who testified that she was sober when Mrs. Darbonne arrived at the bar. When asked about the lighting conditions when she found Mrs. Darbonne's sitting on the curb after the fall, Mrs. Laverne testified, "It was fine. I could see very well." In addition, Mrs. Darbonne was familiar with the store, as she lived nearby, and the evidence established that she visited the store several times. "A pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear." *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 9 (La. 2/20/04), 866 So.2d 228, 235. Mrs. Darbonne, in her exercise of reasonable care, could have chosen a different route which allowed for greater visibility. Viewing the record in its entirety, there is sufficient evidence to support the jury's finding that Mrs. Darbonne was liable in part for her injuries.

We now move on to the issue of whether the trial court erred in its allocation of fault. Regarding the allocation of fault, the court in *Fontenot*, 23 So.3d at 274 stated:

> The law provides we must give great deference to the allocation of fault as determined by the trier of fact. *Clement v. Frey*, 95-1119, 95-1163, p. 7 (La.1/16/96), 666 So.2d 607, 610. We are also aware that the allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and that any allocation by the factfinder within that range cannot be clearly wrong. *Foley v. Entergy La., Inc.*, 06-0983, p. 32 (La.11/29/06), 946 So.2d 144, 166. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award. *Clement*, 95-1119 at 7, 666 So.2d at 611.
>
> As to the allocation of fault, the trier of fact is bound to consider the nature of each party's wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed. *Watson* [*v. State Farm Fire and Cas. Ins. Co.*], 469 So.2d [967,] 971. We are guided by the factors articulated in *Watson*: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of

4

the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. *Id.*, 469 So.2d at 974.

Reviewing the record as a whole in light of these factors, we find no manifest error in the jury's allocation of fault. Bertrand could have improved lighting condition simply by leaving the lights under the canopy adjacent to the convenience store on after the store closed but while the bars remained open. Mrs. Darbonne tripped over a curb that she should have been able to see if she was paying attention. If she could not see well enough, she could have chosen an alternate route that was more well-lit. The evidence supports the jury's verdict.

Mrs. Darbonne's first assignment of error is without merit.

**Damages**

Mrs. Darbonne complains in her second assignment of error that the damages awarded by the jury for pain and suffering, loss of earning capacity, future medical expenses, loss of enjoyment of life, and past lost wages were too low. Past, present, and future pain and suffering and loss of enjoyment of life are elements of general damages. *See McGee v. A C and S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770. A jury is vested with great discretion in awarding general damages, and we may not disturb that award unless there is an abuse of that discretion. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993).

The jury heard evidence that Mrs. Darbonne suffered pain and swelling in her leg from the time of the accident until the trial, a period of about three and a half years. She also suffered some lower back pain because of use of casts or removable boots on her foot made walking more difficult. The jury also heard about other physical problems which caused Mrs. Darbonne to have neck surgery between the two surgeries on her foot. Reviewing the evidence as whole, we find that awarding $50,000.00 for pain and suffering is an abuse of the jury's discretion.

5

We find that an award of $75,000.00 for past and future pain and suffering is the lowest reasonable award.

Mrs. Darbonne claimed that after the accident, she could not go fishing or camping or go four-wheeler riding, and it was very difficult for her to go to LSU games. She also testified that she was not able to play video poker as often as she had before the accident. The jury also heard evidence that suggested that she did not play video poker at Evangeline Downs as often after the accident because she no longer worked within minutes of the casino. She was also able to attend her son's football games and other events in her neighborhood. Again, we find abuse in the jury's award of $5,000.00 for loss of enjoyment of life, and find the lowest award reasonable under these circumstances is $20,000.00.

In *Batiste v. New Hampshire Insurance Co.*, 94-1467, pp. 3-4 (La.App. 3 Cir. 5/3/95), 657 So.2d 168, 170, *writ denied*, 95-1413 (La. 9/22/95), 660 So.2d 472 (citations omitted), we explained:

> Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity.

> In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.

> The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to

earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident.

We review the jury's failure to award of damages for future loss of earnings and loss of earning capacity using the manifest error standard. *Fruge v. Hebert Oilfield Constr., Inc.*, 03-349 (La.App. 3 Cir. 10/1/03), 856 So.2d 100, *writ denied*, 03-2997 (La. 1/30/04), 865 So.2d 77.

At trial, Mrs. Darbonne testified that she had not worked or looked for work since her first foot surgery in February 2008. Mrs. Darbonne introduced the testimony of Glenn Hebert, a vocational rehabilitation counselor. Mr. Hebert testified that Mrs. Darbonne could work in a light duty position with restrictions, which was similar to the work she did as an insurance clerk. He went on, though, to say that she could not be placed in a job because of her use of narcotics for the pain in her foot and because she had to elevate her foot. Bertrand presented the testimony of Stan McNabb, a vocational specialist, who testified that Mrs. Darbonne could return to her old job and had no loss of future earning capacity. The jury's decision to credit Mr. McNabb's opinion over Mr. Hebert's opinion is a valid credibility determination. We find no manifest error in the failure of the jury to award damages for loss of earning capacity. In doing so, we reject the contention of Mrs. Darbonne that a finding of anatomical impairment necessarily requires an award for loss of earning capacity. *See Bennet v. City of New Iberia*, 08-1369 (La.App. 3 Cir. 4/1/09), 7 So.3d 822.

The supreme court explained when a jury may award future medical expenses in *Menard v. Lafayette Insurance Co.*, 09-1869, pp. 12-13 (La. 3/16/10), 31 So.3d 996, 1006 (some citations omitted):

> Under Louisiana law, a tort victim may recover past (from injury to trial) and future (posttrial) medical expenses caused by

tortious conduct. The victim must, however, establish he incurred past medical expenses in good faith as a result of his injury and future medical expenses will more probably than not be incurred. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Importantly, future medical expenses must be established with some degree of certainty. Nevertheless,

> [w]hen the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.

*Stiles* [*v. K Mart Corp.*], 597 So.2d 1012. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary.

> Notably, it is well acknowledged an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty. It follows, therefore, such awards "generally do not involve determining the amounts, but turn on questions of credibility and inferences, i.e., whose experts and other witnesses does the jury believe?"

We review the jury's failure to award of future medical expenses as a finding of fact subject to the manifest error standard. *Menard*, 31 So.3d 996.

Mrs. Darbonne's physicians testified that she would need continued treatment for her foot, including prescription medication for pain and inflammation, doctor visits, x-rays, and orthotics. The doctors based their opinion on Mrs. Darbonne's subjective complaints. Bertrand presented evidence to the jury that Mrs. Darbonne was exaggerating her complaints and that she was fully recovered from the injuries she sustained as a result of this incident. To support this assertion, Bertrand introduced surveillance video of the Mrs. Darbonne walking without difficulty in July 2010. Bertrand also presented to the jury the multitude of other health problems Mrs. Darbonne suffered from, including

fibromyalgia. The jury obviously found Mrs. Darbonne's credibility lacking on the issue of her continued pain and the extent of her injuries at the time of the trial. Credibility determinations made by the jury will not be disturbed on appeal. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557. We find the jury erred in not awarding some future medical expenses to insure Mrs. Darbonne's foot continues to heal for a limited time. We award $5,000.00 for future medical expenses. We reject the suggestion that future medical benefits should be awarded for her entire life expectancy, over 30 years.

The jury's award for past lost wages likewise hinged on a credibility determination. Mrs. Darbonne did not return to work after the first foot surgery in February 2008. The evidence also showed that Mrs. Darbonne missed some work because of an unrelated neck surgery. Given its evaluation of Mrs. Darbonne's credibility, the jury could have concluded, based on the evidence presented at trial, that Mrs. Darbonne could have returned to work before trial. We find no error in the trial court's award of $38,000.00 for past lost wages.

## CONCLUSION

The judgment of the trial court is amended to award $75,000.00 for past and future physical pain and suffering, $20,000.00 for loss of enjoyment of life, and $5,000.00 for future medicals. In all other respects, the judgment of the trial court is affirmed. Half of the costs of this appeal are assessed to Mrs. Darbonne and half of the costs of this appeal are assessed to Bertrand.

**AFFIRMED AS AMENDED.**