657 So.2d 168 (1995)
Joseph BATISTE, Plaintiff-Appellee,
v.
NEW HAMPSHIRE INSURANCE COMPANY, et al., Defendant-Appellant.
No. 94-1467.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
Writ Denied September 22, 1995.
*169 Bennett Boyd Anderson, Jr., Lafayette, for Joseph Batiste.
Charles Andrew O'Brien, III, Baton Rouge, for New Hampshire Ins. Co., et al.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
YELVERTON, Judge.
This appeal in a vehicular accident case involves only the issue of an award for loss of earning capacity. Joseph Batiste, the plaintiff, was a passenger in a truck which was hit by an eighteen wheeler on July 8, 1991. He sustained injuries to his back and sacroiliac joint. Liability was stipulated. A jury on May 23, 1994, awarded itemized damages, including an item for $13,000 for loss of earning capacity. Batiste filed a motion for a judgment notwithstanding the verdict claiming that this particular award was too low. The trial court granted the motion for judgment notwithstanding the verdict and increased the award for loss of earning capacity or future wages to $250,000. The judgment was rendered against Vanliner Insurance Company. Vanliner appealed. We affirm.

JUDGMENT NOTWITHSTANDING THE VERDICT
The article controlling the use of a JNOV is La.Code Civ.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting it. This is done by using the above criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question his in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson, 583 So.2d at 832.

*170 MEANING OF LOSS OF EARNING POWER
Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. Hobgood v. Aucoin, 574 So.2d 344 (La.1990).
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition. Finnie v. Vallee, 620 So.2d 897 (La.App. 4 Cir.), writ denied 625 So.2d 1040 (La.1993).
The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident. Finnie, 620 So.2d at 901.
Since the sole issue before us is plaintiff's loss of earning capacity, we will restrict our recitation of the facts to his medical condition following the accident, his ability to work, his education and experience, and his income before and after the accident.

Medical Condition
Batiste was 25 years old at the time of the accident in 1991. As a result of the accident, Batiste was diagnosed with a Schmorl's node at L1-2 which is an intraosseus herniation of the disc where the disc goes into the bone as opposed to going out in the soft tissue. A sacroiliac arthrodesis procedure was performed on the right sacroiliac joint. As a result of these impairments to his body, Batiste suffered a 15% disability of the body as a whole.
Dr. Stuart Phillips, the orthopedic surgeon who treated him, stated that this 15% loss of function of the body limited him from performing heavy manual labor, which means he could not lift weights over 50 pounds in a single time and could not lift 25 pounds repetitively. He should also avoid bending and stooping. Batiste can work but in a light job with a protected environment.

Ability to Work
Batiste worked for the past 10 years before the accident as an exercise boy for horses. He was responsible for exercising, grooming and hauling horses to the races. Batiste did a lot of work for Paul Brown who testified that Batiste was one of the best helpers he had ever seen in the horse business. He stated that he was a terrific worker.
After the accident, Batiste attempted to do some work in which he would carry one pound bags of chemicals. He worked about five days but walking on the cement all night was causing him pain. He quit and never worked thereafter.

Education and Experience
Batiste has a ninth grade education. He has worked all of his working life with horses and cannot do that now because of his injuries.
Glenn Hebert, a vocational rehabilitation specialist, found that Batiste is functioning at a sixth grade level and has an IQ of 54 which means he is a slow learner. Because of his educational level, Hebert stated that it would be difficult for Batiste to find a job. He could work for minimum wage, maybe a little more. He further stated that a lot of jobs he is qualified to do from a physical standpoint would require a high school diploma. Hebert went on to say that employers are tending to hire people like Batiste on a part time basis.

*171 Income Before and After the Accident

Batiste was making $350 a week before the accident as an exercise boy. Dr. Randy Rice, an economist, testified that his loss of future earnings if he never worked again would be $323,981. He further testified that if he worked 22½ hours a week for six months at minimum wage, his loss of future earnings would be $277,953.

DISCUSSION
This was the only evidence before the jury. There is nothing in the record to support the jury's finding of $13,000 for loss of earning capacity or future wages. Vanliner did not present any evidence to establish that jobs were readily available to Batiste considering his education, experience and disability after the accident. It introduced no evidence of what Batiste's loss of future earnings would be under the circumstances except to cross examine Dr. Rice on the fact that his loss calculation if he returned to work only had him working a fourth of a year.
Based on the evidence presented to the jury, we find that it was unreasonable for the jury to conclude that Batiste had a loss of earning capacity of only $13,000. The trial judge's setting aside of the jury's award of $13,000 for future lost wages was correct as it was abusively low.
We now turn our attention to the award of $250,000 that the trial court made to Batiste for his loss of future earnings. In determining the proper amount of damages to be awarded, the trial judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. The trial court renders a de novo award based on his independent assessment of injuries and damages. Anderson, 583 So.2d at 833-834. The court of appeal reviews the judgment of the trial court under the constraints of Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976): an appellate court can disturb a quantum award made by the trial court only if the record reveals that the trial court abused its discretion.
Considering the evidence that was presented in the trial court, we find that $250,000 was proper. The lowest amount mentioned as a possibility if Batiste returned to work part time at minimum wage was $277,953. This figure did not take into account that Batiste was also receiving room and board as an exercise boy in addition to his wages. There was simply no other evidence in the record to justify a lower amount.
For the foregoing reasons, the judgment of the trial court is affirmed at Vanliner Insurance Company's cost.
AFFIRMED.