698 So.2d 17 (1997)
Sharon W. BURNAMAN, et ux., Plaintiff  Appellant,
v.
RISK MANAGEMENT, INC., et al., Defendant  Appellee.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1997.
Writ Denied October 31, 1997.
*18 Jimmy Roy Faircloth, Jr., Alexandria, for Sharon Burnaman et ux.
Randall Brian Keiser, Alexandria, for Risk Management Inc. et al.
Before YELVERTON, SAUNDERS and GREMILLION, JJ.
SAUNDERS, Judge.
Plaintiff, injured in an automobile accident in which she was unquestionably free of fault, disputes the quantum awards rendered by the trial court. We find favor in her argument that she is entitled to an award of $37,000.00 for necessary surgical expenses, and increase to $50,000.00 her awards for lost earning capacity and lost earnings, and to $60,000.00 her award for general damages.

FACTS
This litigation arises from an automobile accident which occurred on June 21, 1994, in Pineville, Louisiana, when a Pineville police unit driven by Officer Charles Dyess rearended a compact vehicle driven by plaintiff, Sharon W. Burnaman. Fault is not at issue, as at the time of the accident, Ms. Burnaman's vehicle was stopped at a red light.[1]
The only questions raised by this appeal concern the quantum awards rendered by the trial court some seven months following plaintiff's January 1996 trial against the City of Pineville in written reasons dated August 21, 1996, and judgment dated September 10, 1996. The judgment awarded plaintiff past medical expenses of $8,050.90; future medicals of $3,500.00; total loss of past and future income of $6,000.00; general damages of $20,000.00; and loss of consortium to plaintiff's husband of $2,000.00.
Following this judgment, plaintiff appealed assigning three errors, alleging:
(1) that the trial court erred in failing to award future medical expenses for a surgery she believes is needed;
(2) that the trial court abused its discretion in awarding only $6,000.00 for lost past and future income and earning capacity; and,

*19 (3) that the trial court abused its discretion in awarding only $20,000.00 in general damages.

FUTURE MEDICAL EXPENSES: SURGERY
Initially, plaintiff suggests that the trial court abused its discretion in not awarding her the means to undergo a surgical fusion at L5-S1. According to plaintiff, she was advised of the need for surgery by treating physicians Drs. Fritchie and Ricciardi, and the trial court erred when it denied her the means of having the surgery performed.
In Veazey v. State Farm Mutual Auto Ins., 587 So.2d 5, 8 (La.App. 3 Cir.1991), we discussed future medical expenses:
Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. [Citations omitted]. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. [Citations omitted].
Este' v. State Farm Ins. Co, 96-99, p. 11 (La.App. 3 Cir. 7/10/96); 676 So.2d 850, 858.
Plaintiff cites Este and other authority to suggest that the trial court improperly equated her treating physician's decision to leave the final say as to whether or when to have surgery to her together with her unyielding efforts to avoid it, with an absence of need to have the operation which was recommended by her treating physician. Plaintiff maintains that the fact that her long course of conservative care has proven ineffectual all the more establishes her present need to endure the risky operation if she is to have any chance at all of being restored to her pre-accident physical condition.
Defendant's reply is that plaintiff's treating physician, Dr. Ricciardi, never indicated that surgery was necessary, but rather that the surgical option could be pursued only if plaintiff chose it. Defendant complains that it should not be required to pay for such optional treatment. Second, defendant alludes to the testimony of another orthopedist, Dr. Robert Po, who saw plaintiff on September 22, 1994, and was then of the opinion that plaintiff's symptoms were associated with degenerative arthritis. Finally, defendant alludes to the testimony of two physicians, Dr. Lawrence Russo, an orthopedic surgeon, and Dr. Scott Kendrick, a physiatrist and general practitioner, respectively. According to defendant, both were of the opinion that plaintiff probably was magnifying her symptoms.
In reply to defendant's thrusts, plaintiff points out that, unlike the doctors upon whose testimony her case rests, Drs. Fritchie and Ricciardi, Dr. Kendrick never examined plaintiff and Dr. Russo, who was not a treating physician, only examined her once, on an Independent Medical Examination request. Additionally, plaintiff maintains that defendants misconceive or mischaracterize Dr. Ricciardi's recommendation. According to plaintiff, Dr. Ricciardi thought it advisable to let his patient decide whether she was willing to accept the risk of proceeding with such an operation because he simply could not guarantee its outcome.
We have reviewed the law and the record and find favor in plaintiff's appeal.
In a personal injury case, the plaintiff bears the burden of proving the existence of injuries and a causal connection between them and the accident. The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Petersen v. State Farm Auto. Ins. Co., 543 So.2d 109 (La.App. 3 Cir.1989), writ den., 546 So.2d 1223 (La.1989); Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987); Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1 Cir.1987).
Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 156 (La.App. 3 Cir.), writ denied, 565 So.2d 450 (La.1990).
*20 This is all that must be proven. An injured accident victim is not to be denied her only chance at recovering any or all of her pre-accident health status only because the outcome is uncertain.
Although the possible result and complications of any future surgery are unknown and cannot be fixed with precision, future medical expenses are a legitimate item of damages. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Cushman v. Fireman's Fund Ins. Co., 401 So.2d 477 (La.App. 2 Cir.1981).
Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281,1287 (La.1984).
In this case, the record shows that plaintiff sought conservative medical care as long as possible, and only when this conservative care proved ineffectual did she and her treating physician opt for the more invasive procedure. First, plaintiff saw Dr. Wynn Harvey, a chiropractor. With no relief forthcoming, plaintiff was seen by Drs. Fritchie and Ricciardi, both of whom seemed to believe, consistent with plaintiff's assertions, that surgery offered plaintiff her only hope of physical improvement.
This was all that the law required of plaintiff, particularly since defendant's liability is conceded. Contrary to defendant's argument, plaintiff did not have to show that the surgery would ensure her complete recovery, only that it was more likely than not to be required and that it might offer some relief. Guillory, 448 So.2d 1281, and cites therein. Accordingly, we find that the trial court erred in concluding that plaintiff was not entitled to the $37,000.00 required to have the surgery and award same.

LOST PAST WAGES AND FUTURE EARNING CAPACITY
Next, we address plaintiff's contention that the trial court abused its discretion in awarding her only $6,000.00 for past lost wages and future lost earning capacity. Under the circumstance presented by this factual scenario, we are inclined to agree.
Damages for lost earning capacity must be awarded where proven by a preponderance of the evidence, not by some higher standard. For a lengthy history on this matter, see Pierce v. Milford, 96-92 (La.App. 3 Cir. 9/25/96); 688 So.2d 1093.[2] Moreover, it is to be observed that the component of relief styled as future lost earning capacity is not synonymous with damages awarded for future lost earnings.
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979). In accord, Hobgood v. Aucoin, 574 So.2d 344 (La.1990); Batiste v. New Hampshire Ins. Co., 94-1467, (La.App. 3 Cir. 5/3/95); 657 So.2d 168, writ denied, 95-1413 (La.9/22/95); 660 So.2d 472. Even an accident victim who is "unemployed at the time of the injury ... is entitled to an award for impairment or diminution of earning power." Folse, 371 So.2d 1120, 1123.
The question is whether Mr. Pierce was adequately compensated for his future lost earning capacity.
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned *21 but for his injuries and what he may now earn given his resulting condition. Finnie v. Vallee, 620 So.2d 897 (La.App. 4 Cir.), writ denied, 625 So.2d 1040 (La. 1993).
The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident. Finnie, 620 So.2d at 901.

Batiste, at pp. 3-4, 657 So.2d at 170.
Pierce, at 3; 688 So.2d at 1095.
After reviewing the evidence presented by this controversy, we conclude that the trial court erred in finding plaintiff only entitled to $6,000.00 for lost earnings and lost earnings capacity, whether this error was due to its requiring plaintiff to establish her lost earning capacity by more than a simple preponderance or by equating the burden of proof essential for proving damages for future lost earning capacity with the more onerous burden required to obtain damages for future lost earnings.
The record shows that plaintiff earned approximately $11,000.00 per year as an assistant manager of a school cafeteria, a position which required some lifting, twisting, standing and sitting, in addition to her supervisory responsibilities, and that she missed considerable work from the time of the accident in June 1994 to the date of trial in January 1996. Additionally, the evidence shows that, whereas prior to the accident, plaintiff was able to work around the house, afterwards she could not, suggesting a significant loss of wages pre-trial. Finally, while the evidence tends to suggest that with surgery plaintiff more likely than not will be able physically to do most of the things she could before becoming injured, there is still some possibility that the surgery will not be successful and that plaintiff, essentially a manual laborer who has risen with seniority to assume the mantle of assistant manager with some supervisory responsibility,[3] will not be able to compete in the job market as ably as she could before the accident, as her weakened back condition henceforth will forever be part of her employment record.[4]
In view of the foregoing factors, particularly plaintiff's established need for surgery, we conclude that the trial court's award for past lost earnings and lost future earning capacity was abusively low and that an award of $50,000.00, which we render, constituted the lowest reasonable award under the circumstances.

GENERAL DAMAGES
Having concluded that plaintiff has established her likely need for future surgery and reduced earnings, we next address her argument that her general damages award of $20,000.00 was inadequate given the evidence presented.
Again we find merit in plaintiff's contention. Initially, we observe that the road to recovery from surgery will not be an easy one, and this regardless of whether defendant is justified in its position that plaintiff is more prone to agonize than most.[5]
Unquestionably, the severity and persistence of the subjective symptoms (headaches, dizziness, disorientation) in part resulted *22 because of an underlying (but until then controlled) emotional instability of the plaintiff, a non-specific schizophrenic process of long standing. Nevertheless, a tortfeasor takes his victim as he finds him, and he is responsible in damages for the consequences of his tort although the damages so caused are greater because of a prior condition of the victim which is aggravated by the tort. Restatement of Torts, 2d, Section 461; see many Louisiana cases including, e. g., Johnson v. Ceaser, 304 So.2d 855 (La.App. 4th Cir.1974).
Reck v. Stevens, 373 So.2d 498, 502 (La.1979).
Additionally, there is no evidence to contradict the testimony of plaintiff, her husband and two daughters that before the accident she not only was the principal breadwinner, owing in part to her husband's limited earnings record and/or ability, but also the prevalent care giver in the home. According to her children, before the accident plaintiff did more than ninety percent of the cooking and house cleaning and could help her husband garden, whereas afterwards her self-esteem was battered by being unable to do any of these activities, even by having to give up driving. In short, before the accident, plaintiff was occasionally hobbled by nagging back pains, afterwards her ability to provide in either capacity was virtually annihilated. Additionally, apart from the pain and anguish that plaintiff had to tolerate prior to trial, she will undoubtedly have to look forward to many months more following the expected surgery.
In view of the foregoing, we conclude that the trial court's general damages award of $20,000.00 was abusively low, and amend it to $60,000.00, the lowest reasonable amount that could be awarded under the circumstances.

DECREE
For the reasons assigned, we amend the judgment of the trial court to award future medical expenses of $37,000.00 to cover the cost of surgery, award $50,000.00 for her combined lost wages and earning capacity, and further award general damages of $60,000.00, at defendant's costs.
AFFIRMED AS AMENDED IN PART AND RENDERED.
NOTES
[1] It would seem as though the accident occurred when, after slowing down to stop his police vehicle behind plaintiff's vehicle, Officer Dyess' became distracted and permitted his foot to slip off the brake of his car, causing the protruding "buddy bumper" of his police car to bump into plaintiff's rear bumper.

As a consequence of the relatively low speed of impact and the presence of the police cruiser's "buddy bumper," the collision caused no damage to either vehicle.
[2] Moreover, while it is true that, as the majority observed in Pierce, some uncertainty has appeared since the Louisiana Supreme Court's clear enunciation on the subject in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), due to language suggesting that an award for loss of earning capacity must be proven "with some measure of reasonable certainty," it is equally clear that this language may not be relied upon to suggest that more than a preponderance is required to establish such a claim. See, e.g., Judge Amy's concurring opinion in Pierce, 688 So.2d 1093.
[3] The record shows that although plaintiff's job was classified as an assistant cafeteria manager, she was required to perform considerable manual labor, notwithstanding her job title, particularly when supplies and foodstuffs were delivered; otherwise it would be difficult to explain how she was granted excused absences from her employment when she injured herself on other occasions.
[4] The odd-lot doctrine no longer qualifies injured individuals for compensation for injuries at the workplace that are sustained in the course and scope of employment, but is relevant in cases arising under general delict.
[5] Defendant suggests that plaintiff's medical/psychiatric symptoms include a history of symptom magnification, it would appear that her treating physicians do not believe that her complaints are contrived, at least in her mind.