| WOODARD, J.,
dissenting.
I agree with the majority’s opinion in all respects except for its decision to reverse the trial court's future loss of earnings/earning capacity award in so far as it relates to the future loss of earning capacity award.
The majority does not distinguish lost wages with future loss earning capacity. In effect, when reversing the trial court’s $100,000.00 “[fjuture loss of earnings or earning capacity” award, the majority discards the “earning capacity” factor comprised in the trial court’s decision. Instead, it finds that the trial court’s “awards [of] ... future loss of earnings are not supported by the record.” (Emphasis added.)
I respectfully disagree with both the majority’s legal analysis and its factual conclusions of the record.
Our well-settled jurisprudence distinguishes loss of future earning capacity with lost wages or future lost earnings.[1] It is clear that earning capacity refers to a person’s potential, as opposed to actual loss only.[2] In Folse v. Falcouri,[3] the landmark case on this issue, the Louisiana Supreme Court stated:
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have |2seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
(Emphasis added.)
While lost earnings are determined by actual loss, such a standard does not necessarily reflect a plaintiffs lost earning capacity.[4] What it compensates is a plaintiffs ability to earn a certain amount.[5] The plaintiff may recover such damages although he/she may never have seen fit to take advantage of that capacity.[6]
In Pierce v. Milford,[7] we stated that:
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how *138 much plaintiffs current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.
The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiffs condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiffs employment opportunities before and after the accident.
(Citations omitted.) Furthermore, plaintiff has the burden of proving entitlement to loss earning capacity by a preponderance of the evidence.[8] On appeal, we review a trial court’s loss earning capacity award under the abuse of discretion standard.[9]
lain the case sub judice, contrary to the majority’s conclusions, I find that the record clearly supports the trial court’s future loss of earnings/earning capacity award. Dr. Louis Charles Blanda testified that Mr. Harris has lost the capacity to perform heavy manual labor. Mr. Hebert, a vocational rehabilitation expert, stated that before his accident, Mr. Harris could have earned $20,000.00 to $22,000.00 per year working as a galley-hand, which entails heavy manual labor. However, he opined that he can no longer secure this type of employment because of his post-accident physical restrictions. Mr. Harris’ unrebut-ted testimony was that he had received a permanent $7.00 per hour employment offer prior to the accident.
Notwithstanding, the majority suggests that we calculate his loss of future earnings/earning capacity based on the difference between his past earnings, $5.60 per hour, and his suggested post-accident earnings, namely $5.15 per hour. This calculation is obviously in error. At the least, under the aforementioned jurisprudence, the trial court had a rational basis to determine that Mr. Harris could have earned more than $5.60 per hour, namely, $7.00 per hour as he testified, or $20, 000.00/$22,000.00 per year as Mr. Hebert opined.
Accordingly, I find that the trial court did not abuse its vast discretion when it awarded Mr. Harris $100,000.00 in loss of future earnings/earning capacity.

. Burnaman v. Risk Management, Inc., 97-250 (La.App.6/18/97); 698 So.2d 17, writ denied, 97-1832 (La.10/31/97, 703 So.2d 23); Sloan v. Dailey, 95-906 (La.App. 3 Cir. 12/6/95); 664 So.2d 792.

. Batiste v. New Hampshire Ins. Co., 94-1467 (La.App. 3 Cir. 5/3/95); 657 So.2d 168, writ denied, 95-1413 (La.9/22/95); 660 So.2d 472.

. 371 So.2d 1120, 1124 (La.1979).

. Batiste, 657 So.2d 168.

. Id.

. Id.

. 96-92 (La.App. 3 Cir. 9/25/96); 688 So.2d 1093, 1095.

. Pierce, 688 So.2d 1093.

. Batiste, 657 So.2d 168.