# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 15-1130


**KARL E. KIMSEY**

**VERSUS**

**NATIONAL AUTOMOTIVE INSURANCE CO., ET AL**


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C20110102
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

**********

**DAVID KENT SAVOIE**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and David Kent Savoie, Judges.

**GREMILLION, J., concurs in the result.**


**AFFIRMED.**

**R. Scott Iles**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Karl Kimsey**

**Allen J. Mitchell, II**
**Mitchell & Blanco**
**One Lakeshore Dr., Suite 1495**
**Lake Charles, LA 70629**
**(337) 436-8686**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State Farm Mutual Auto Ins. Co.**

**Brent Nicolas Carriere**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **National Automotive Insurance Co.**

**SAVOIE, Judge.**

In this automobile accident case, we previously dismissed the plaintiff's appeal of the trial court's judgment that, among other things, ordered the insurer to provide for a knee surgery only if the plaintiff scheduled the surgery within one year, finding that the conditional judgment was interlocutory and not appealable. *Kimsey v. Nat'l Auto. Ins. Co.*, 13-856 (La.App. 3 Cir. 2/12/14), 153 So.3d 1035. Following our decision, the trial court rendered a final judgment in this matter, and the plaintiff again appeals. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

This case arises out of an automobile accident that occurred on February 3, 2010, in DeRidder, Louisiana, between Plaintiff Karl Kimsey, who was eighteen years old at the time, and Defendant Terry Dickens. The vehicle driven by Mr. Kimsey was insured by State Farm Mutual Automobile Insurance Company (State Farm), and the policy included medical payments coverage as well as $50,000.00 in uninsured motorist, economic-only coverage. The vehicle driven by Mr. Dickens was insured by a $10,000.00 liability policy issued by National Automotive Automobile Insurance Company (NAIC).

Mr. Kimsey alleges that he sustained a left knee injury as a result of the accident. On July 26, 2010, he first saw Dr. John Park, an orthopedic surgeon, for treatment of a partial ACL tear of his left knee and underwent an arthroscopic procedure on November 2, 2010. Dr. Park further recommended ACL reconstruction. Following the November 2, 2010 arthroscopic procedure, Mr. Kimsey saw Dr. Park once more on January 7, 2010, but did not return until June 11, 2012, when he and his mother met with Dr. Park in preparation for his deposition.

At the time of the accident, Mr. Kimsey was working for his father's vending business, and he testified that he was earning between $250 and $300 per week working for his father. He did not work for approximately three months due to his injury and arthroscopic procedure. Beginning May 1, 2011, Mr. Kimsey began working for his mother's vending business delivering for Pepperidge Farm. He testified that he earned between $200 and $250 per week.

> Mr. Kimsey filed the present matter, naming Mr. Dickens, State Farm, and NAIC as defendants. State Farm thereafter filed a cross-claim, asserting a subrogation claim for sums paid under its policy. Prior to trial, Mr. Kimsey stipulated that his damages did not exceed $50,000.00. By the time of the resulting bench trial, State Farm continued to contest its responsibility for the left knee reconstruction recommended by Dr. Park. State Farm further contested Mr. Kimsey's claim for future loss of earning capacity.

*Kimsey*, 153 So.3d at 1036.

A bench trial was held August 22, 2012. The trial court rendered an initial judgment on March 27, 2013, against Mr. Dickens and NAIC for the remainder of the policy limits in the amount of $9,058.16, which, according to the trial court's written reasons for judgment, represented damages for pain and suffering. The trial court awarded an additional $3,850.00 in past lost wages, representing $50 per week for seventy-seven weeks beginning May 1, 2011, after considering amounts that State Farm had already paid. The trial court found this to be "the average amount he loses per week as a result of his residual pain and suffering and knee injury." In addition, Mr. Kimsey was awarded $50 per week for an additional eight weeks ($400.00) to allow time to schedule the second surgery.

The March 27, 2013 judgment also directed Mr. Kimsey's vocational rehabilitation expert, Mr. Glenn Hebert, to facilitate the recommended ACL reconstructive surgery and post-operative physical therapy and ordered State Farm

to approve and pay for it, provided that the surgery was scheduled within one year. The judgment also awarded future lost wages at $300 per week during recovery from the recommended surgery if it was scheduled within one year. In the event Mr. Kimsey did not undergo the surgery within one year, the trial court indicated that any party could return to court "to address whether or not these costs should be paid at a future date or whether the obligation should be terminated."

Both Mr. Kimsey and State Farm appealed the March 27, 2013 judgment. Their appeals were dismissed for lack of jurisdiction because the judgment was found to be conditional and therefore not final and appealable. *Kimsey*, 153 So.3d 1035.

The trial court heard the matter again on June 22, 2015, at the request of the parties, to determine whether or not additional amounts should be paid to Mr. Kimsey. As of the second hearing, Mr. Kimsey had not undergone, or otherwise scheduled, the recommended ACL reconstruction surgery. The trial court rendered a final judgment on July 24, 2015, against Mr. Dickens and NAIC for the remaining amount of the policy limits ($9,056.16) plus interest, and against State Farm for $400.00 for future lost wages at $50 per week for eight weeks. State Farm had already paid the $3,850.00 in lost wages contemplated by the March 27, 2013 judgment. In addition, the trial court set Mr. Hebert's expert fee at $1,000.00 and divided the court costs equally between NAIC and State Farm. The trial court refused to award Mr. Kimsey with the estimated costs of the ACL surgery or any increased amount for future lost wages. Mr. Kimsey appeals.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Kimsey asserts the following as an assignment of error:

3

After having the district court's judgment vacated by this Honorable Court, the district court again erred in faulting Karl Kimsey for not forcing State Farm Mutual Automobile Insurance Company to authorize and pay for surgery when such order had been vacated by this Honorable Court[.]

In addition, Mr. Kimsey states in his brief that he is re-urging the assignments of error he originally submitted in connection with the appeal of the March 27, 2013 judgment, which were not considered, and asserts that:

1. The trial court erred "in awarding an offset of damages under the liability policy issued by National Automotive Insurance Company to pay a subrogation claim for State Farm Mutual Automobile Insurance Company for medical payments when the subrogation was inferior."

2. The trial court erred "in failing to award full economic damages including economic-only uninsured motorist coverage for the lost earning capacity of Karl Kimsey."

3. The trial court erred "in awarding future medical expenses by directing the plaintiff's vocational rehabilitation expert to facilitate the same instead of awarding the actual costs of the future medical expenses."

4. The trial court erred "in the award of expert fee for Glenn Hebert's work and testimony, or future work associated with scheduling a knee ACL repair."

## ANALYSIS

### Standard of Review:

As set forth by the Louisiana Supreme Court in *Stobart v. State through Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993) (citations omitted):

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> 2) [T]he appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.

## Future Medical Expenses

Mr. Kimsey argues on appeal that our prior opinion in this matter "vacated" the March 27, 2013 judgment and required the trial court to award him the amount of the estimated cost of the recommended ACL reconstruction surgery and physical therapy associated with the surgery. In addition, Mr. Kimsey re-urges his argument that trial court's March 27, 2013 judgment conditioning a future medical award on the scheduling of the surgery was erroneous. Mr. Kimsey also argues that it was error for the trial court to refuse to ultimately award damages for future medical expenses in the amount of the estimated costs associated with the surgery, suggesting that the trial court impermissibly faulted Mr. Kimsey for not having money to pay for the surgery.

"Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred." *Veazey v. State Farm Mut. Auto. Ins. Co.*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991).

We first note that this court's ruling in *Kimsey*, 153 So.3d 1035, did not vacate the trial court's March 27, 2013 judgment, or otherwise find it erroneous. Rather, this Court found appellate jurisdiction to be lacking because the March 27, 2013 judgment was not final and appealable, and the merits of the judgment were not considered. We therefore reject Mr. Kimsey's argument that this court's opinion in *Kimsey* required the trial court to award damages for future medical expenses in the amount of the estimated surgery and physical therapy.

5

During the August 22, 2012 bench trial, which was approximately a year after Dr. Park had recommended the ACL reconstruction surgery, Mr. Kimsey testified that he would like to have the surgery performed by a specialist who performs similar surgeries daily, rather than a general orthopedic doctor who does not have similar experience. When asked what steps he had taken to schedule the surgery, Mr. Kimsey testified that "I'm looking into two or three of them right now. I got one in Alexandria that said he could do it, but I ain't too sure. I'd really like to go up to Atlanta and the Atlanta Falcons orthopedic group to actually reconstruct my knee." When asked why he had not yet undergone the surgery, he stated he did not have the money to do so.

In addition, portions of Mr. Kimsey's deposition taken in June 2011, were admitted into evidence. Mr. Kimsey testified in his deposition, "[w]ell, the only reason I haven't had it is because, you know, I've been working. I'm just getting back to work and I want to make some money." He also testified during his deposition that there was no other reason why he had not had the surgery done.

In its written reasons for ruling in connection with the March 27, 2013 interlocutory judgment, the trial court stated:

> The Court is satisfied that Mr. Kimsey has proved that a second surgery is needed. . . . . Mr. Kimsey is allowed one year from today's date to schedule and complete the surgery, while his post surgery may proceed past that date. In the event that Mr. Kimsey fails to schedule said surgery, then either party may return to this court to address whether or not these costs should be paid at a future date or said availability of payment of costs shall be herein terminated as plaintiff failed to mitigate his damages. . . . .
>
> Other conditions of the surgery shall include that Karl Kimsey choose a surgeon either in the Lake Charles, Alexandria or Lafayette area of the State of Louisiana[.]

6

The trial court further explained its March 27, 2013 ruling in its written reasons provided in connection with the final judgment rendered July 23, 2015:

> The bench trial was tried before this Court on August 22, 2012, and centered around injuries sustained by Karl Kimsey in an automobile injury on February 10, 2010. At that time Mr. Kimsey had failed to mitigate his damages by having ACL repair to his knee surgery [sic] as suggested by his medical doctor. . . . On direct, Mr. Kimsey suggested the reason he had not had the surgery was the inability to pay for more surgery. . . .
>
> Considering the testimony and giving consideration to that fact that the biggest issue was money, the Court fashioned a Judgment to allow the plaintiff the costs of surgery, if he chose to have surgery.

While we previously found the trial court's March 27, 2013 judgment to be interlocutory in *Kimsey*, 153 So.3d 1035, an "appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him" in connection with an appeal taken from a final judgment. *Babineaux v. University Med. Ctr.*, 15-292, p. 4 (La.App. 3 Cir. 11/4/15), 177 So.3d 1120, 1123 (*citing Robertson v. Doug Ashy Bldg. Materials, Inc.*, 14-141 (La.App. 1 Cir. 12/23/14), 168 So.3d 556, fn. 13). However, we fail to see how the trial court's interlocutory order allowing Mr. Kimsey a year to schedule the recommended surgery with the assistance of Mr. Hebert, and requiring State Farm to pay for the scheduled surgery was prejudicial to Mr. Kimsey or otherwise an abuse of the trial court's discretion in conducting the proceedings. *See* La.Code Civ.P. art. 1631. Therefore, we find no error in the trial court's interlocutory order.

When the matter was reheard on June 22, 2015, Mr. Kimsey testified again that he had not undergone, or scheduled, the recommended ACL reconstruction surgery. In its written reasons for its final judgment rendered July 23, 2015, the trial court stated:

Now, again in court on the 22nd day of June, 2015, Mr. Kimsey states that he has not had the surgery and has not taken any steps toward having the surgery. He stated, "Besides trying to help my mom out with her job, it's just totally my fault that I haven't took the proper steps forward to get the surgery done. That's my fault, Your Honor."

It has been over five years since the accident, over two years since the rendition of Judgment, and over one year since plaintiff's appeal was dismissed. Under any scenario, the time period laid out in the condition of surgery being covered by State Farm has expired within one year from judgment, has expired. [sic.] Glenn Hebert, plaintiff's expert, testified at the trial in 2010, as to how long it takes to set up a surgery like the one Mr. Kimsey suggested. His response was "two weeks to get him on the surgery schedule" and "normal recovery was six to nine months."

Plaintiff's mother testified that she made one phone call to Dr. Hinton, in Lake Charles, Louisiana, after the last trial. Reportedly, the plaintiff's mother gave the doctor's office [State Farm's counsel's] information, but due to the matter having been on appeal at the time, [State Farm's counsel] refused the conversation. According to the arguments made by [Kimsey's counsel] at the hearing, the doctor's office called [Kimsey's counsel's] office and spoke to "Lindsey" at his office. She reportedly was told that [Kimsey's counsel] should pay for the surgery. No other phone calls were made either by [Kimsey's counsel] to [State Farm's counsel] or to Glenn Hebert, who the Court stated could assist in setting up the matter as per his testimony in open court. There was, the Court gathers, some discussion between counsel a few days prior this hearing, but nothing else.

The Court will not award the costs of surgery based on the plaintiff's failure to schedule surgery. His testimony has never been convincing that he in fact wants to have the surgery, and he appears to be as active at this point as before the accident.

Mr. Kimsey's failure to schedule the recommended ACL surgery within two years of State Farm being ordered to approve and pay for any scheduled surgery, as well as Mr. Kimsey's testimony that the failure to schedule the surgery was due to his own fault, reasonably supports a conclusion that Mr. Kimsey failed to establish that he would, more probably than not, incur the expenses related to the surgery. Therefore, we find that the trial court's refusal to ultimately award Mr.

8

Kimsey with future medical expenses was not manifestly erroneous. We affirm the trial court's rejection of Mr. Kimsey's claim for future medical expenses.

**Lost Earning Capacity**:

Mr. Kimsey also seeks additional damages for lost earning capacity. In particular, he argues that his vocational rehabilitation expert Glenn Hebert's testimony indicating that lost earnings exceeded the available policy limits was uncontested and therefore requires an additional award in the amount of the remaining policy limits.

> Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

*Pierce v. Milford*, 96-92, p. 3 (La.App. 3 Cir. 9/25/96), 688 So.2d 1093, 1095, (quoting *Folse v. Fakouri*, 371 So.2d 1120, 1124 (La.1979)).

> In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.
>
> The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident.

*Batiste v. New Hampshire Ins. Co.*, 94-1497, pp. 3-4 (La.App. 3 Cir. 5/3/95), 657 So.2d 168, 170, *writ denied*, 95-1413 (La. 9/22/95), 660 So.2d 472 (citations omitted).

Prior to the accident, Mr. Kimsey had been homeschooled through tenth or eleventh grade, and then worked for his father's vending business. At the time of the accident, he worked for his father, making between $250 and $300 per week, and, at the time of the first hearing, Mr. Kimsey had been working for his mother's vending business since May 1, 2011, making between $200 and $250 per week. Mr. Kimsey also testified that he hoped to one day work in the oilfield industry after his knee was reconstructed, but that he did not believe he was physically able to hold such a position at the time of the first trial due to his injury.

Mr. Hebert testified at trial regarding Mr. Kimsey's earning capacity. He testified that Mr. Kimsey had expressed an interest in working in the oilfield industry, although he did not have an established history of working in the oilfield and had failed an OSHA exam. Mr. Hebert testified that he had assessed Mr. Kimsey's level of functioning with various standardized tests. He concluded that Mr. Kimsey had math and reading skills on a second grade level and was considered a "functional illiterate." He further concluded that Mr. Kimsey

> [o]nly established he'll be able to a laborer, oilfield worker laborer. He's not going to be roughneck [,] . . . . cement hand[,] . . . . [or] a casing hand. He's going to be a laborer on a rig or a laborer on the back of a boat.

Mr. Hebert also testified that:

> [Mr. Kimsey] wanted to be a tankerman, but I don't think he has the educational background to be a tankerman. It's too hard of a test because of the chemicals you have to know and the OSHA regs. But I thought at least he could be a deckhand working offshore or oilfield worker on land doing construction labor, general laborer, brick mason, working with cement, things of that nature that would pay him more money than he was making when he got hurt.

In addition, Mr. Hebert indicated that Mr. Kimsey lacked the educational background necessary to take over his parents' businesses.

10

Mr. Hebert's testimony concerning his calculation of lost earning capacity was as follows:

> Q. If Mr. Kimsey had an earning capacity to work offshore at the time of this accident, what does that translate to financially?
>
> A. If he'd have been a roustabout it'd have been about $11 an hour. . . . 106 hours, times 26 weeks a year. So that's what his earning capacity would be. Be about [$]27, $28,000 [per year].
>
> If he'd have worked on boats, deckhands make anywhere from 100 to $125 a day. . . . and that correlates to [$]18,500-$23,125 a year.
>
> Q. . . . . Is the way you determine his earning capacity loss, is that to subtract what he has earned from these numbers ranging between [$]18,500 and [$]28,000?
>
> A. That's how you do past loss, but not future. Past you just take what he was making at the time of the accident and you subtract what he could have made and that will give you past losses. Future is going to be done differently because I have a different earning capacity post-injury and pre-injury.
>
> Q. Well, if the economic only U.M. policy here has [$]46,400 left, even as of right now has he already lost that number?
>
> A. Yes, sir.
>
> Q. And how so?
>
> A. He hadn't worked in three and a half years where he could have been earning [$]25,000 a year. That's [$]75,000, or [$]87,500 to be exact, minus what he made. So that's still over $50,000.

Mr. Hebert further admitted that in calculating Mr. Kimsey's earning capacity, he was not provided with, nor reviewed, Dr. Park's records, and that his opinion was based on an assumption that Mr. Kimsey would be restricted to light to medium work even after undergoing the ACL reconstruction surgery. However, he testified that:

> If the doctor says that after the ACL repair and recovery period for six to nine months he's released to full-duty . . . , at that time his loss of earning capacity stops. His earning capacity exists from the accident to recovery period and then he can go back to normal work. Right

now he can't do normal work because he needs ACL repair and no one's going to hire him. At that time, if he gets a full release with no limitations, his loss of earning capacity stops.

Dr. Park's deposition testimony was accepted into evidence. He testified that, if Mr. Kimsey were to have the recommended ACL surgery, he would be able to regain full strength and stability and would be able to perform the same activities that he could do before surgery. He also indicated that, following the ACL reconstruction, Mr. Kimsey would need to undergo routine rehabilitation, and that "it would take a minimum of six to nine months before he can return to normal sports and normal heavy job activities." Dr. Park further testified that if Mr. Kimsey were to undergo the surgery and rehabilation, he would physically be able perform the duties of an offshore deckhand.

Ultimately, the trial court found that Mr. Kimsey's earning capacity was $300 per week, both at present and in the future, and rejected Mr. Kimsey's argument for an enhanced future earning capacity based on aspirations of working in the oilfield industry stating as follows:

> Most of the testimony presented at the trial centered around the future earning capacity of the plaintiff, Karl Kimsey. The Court is satisfied that Karl Kimsey's present earning capacity, as well as future earning capacity, remains at the amount of $300 per week. No viable argument supports the fact that simply because a plaintiff dreams a particular job, he is entitled to an enhanced amount of earning capacity when the plaintiff has never held such a position. In this case it is very clear that based on the lack of formal education and testing of Karl Kimsey, that the job he is currently performing is the only job he can perform unless and until he completes additional education or education as to a particular skill. His own expert, Mr. Hebert, even testified that Mr. Kimsey did not have the wherewithal to handle the job indicated or even to take over his parents' business. He testified that Karl Kimsey could only continue as an employee in the capacity or like capacity as he is currently employed, based on his education, ability, and experience. Based on this, all of the argument as to enhanced future loss of wages is not accepted by this Court. All loss of wages will be set at the rate of $300 per week

It then awarded Mr. Kimsey with seventy-seven weeks of lost wages in the amount of $50 per week, as the additional amount Mr. Kimsey could have earned had he not been injured. While the trial court recognized in its March 27, 2013 interlocutory judgment that it would award an additional $300 per week in lost wages in the event the second surgery was scheduled within the one-year time frame, for a maximum of thirty-six weeks, the trial court further stated that, "[i]f the needed second surgery is not scheduled, then the Court finds that the [plaintiff] has failed to mitigate his damages, and therefore no additional wages will be due."

At the time of the second hearing on this matter, Mr. Kimsey had not scheduled the second surgery. The trial court again rejected Mr. Kimsey's claim for additional damages for lost earning capacity. In so ruling, the trial court stated as follows (footnote omitted):

> Since the plaintiff did not have the surgery, he has no lost wages relating to that. His only testimony of lost wages relates to the fact that he has always worked for his parents, who work as distributors for food companies. Since the [first] trial, his father has retired; his mother quit due to health problems. Mr. Kimsey tried to run the business and hire another person to help him, but was not successful. This was predicted at the [first] trial by his own expert, Glenn Hebert . . . not as a result of the accident, but as a result of [Mr. Kimsey's] lack of second grade math skills and that he was, through testing, considered a functional illiterate as a result of his home school education being lacking.
>
> The Court finds that any claimed loss of wages in addition to the previous award was not proven with documents to support the claim. Furthermore, if there was indeed any, it was due to Mr. Kimsey's lack of education and ability and not this accident.

We reject Mr. Kimsey's argument that Mr. Hebert's testimony requires an additional award of damages for lost earning capacity in the amount of the remaining policy limit available under the State Farm policy. The trial court's

ruling is reasonably supported by Dr. Park's testimony and therefore is not manifestly erroneous.

## Expert Fee

Mr. Kimsey also re-asserts his argument originally submitted in connection with his appeal of March 27, 2013 judgment that the trial court erred in setting Mr. Hebert's expert fee at only $1,000.00. He argues that Mr. Hebert had submitted a bill in excess of that amount, spent over five hours traveling and testifying at trial, and that he was ordered to facilitate the scheduling of surgery.

> Pursuant to La.R.S. 13:3666, expert witnesses are entitled to be compensated for their services in an amount to be determined by the court which are taxed as costs to be paid by the party cast in judgment. . . . . The determination of expert witness fees and the reasonableness of costs incurred by the prevailing party is within the sound discretion of the trial court which an appellate court may not overturn absent an abuse of discretion. *Corkern v. Smith*, 06-1569 (La.App. 3 Cir. 6/6/07), 960 So.2d 1152, *writ denied*[,] 07-1803 (La. 1/25/08), 973 So.2d 754. "In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances." *Massie v. Deloach*, 04-1425, p. 10 (La.App. 3 Cir. 3/2/05), 896 So.2d 1246, 1252, *writ denied*, 05-786 (La. 5/6/05), 901 So.2d 1107. Factors to be considered include (1) the amount of time spent preparing for trial; (2) the time actually spent in court; (3) the extent and nature of the work performed; (4) the knowledge, attainments, and skill of the expert; (5) awards to experts in similar cases; (6) the complexity of the problem addressed by the court; and (7) the helpfulness of the expert's report and testimony to the trial court. *Id.*

*Raymond v. Gov't. Employees Ins. Co.*, 09-1327, pp. 18-19 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, 1193-94, *writ denied*, 10-1569 (La. 10/8/10), 46 So.3d 1268.

No evidence was submitted in connection with establishing Mr. Hebert's fee. In addition, the trial court rejected Mr. Hebert's opinion concerning the amount of lost earnings Mr. Kimsey sustained in connection of the accident. Moreover, Mr. Kimsey did not ultimately schedule the recommended ACL

14

surgery. Therefore, we do not find that the trial court abused its discretion in setting Mr. Hebert's fee at $1,000.00

**Subrogation Claim**

Mr. Kimsey also indicates he is re-urging his argument submitted in connection with his appeal of the interlocutory March 27, 2013 judgment that the trial court erred by reducing the $10,000 policy limit of the NAIC policy available to Mr. Kimsey by $941.84. This is the amount that NAIC had previously paid to State Farm in connection with State Farm's subrogation claim for medical payments made on Mr. Kimsey's behalf.

However, in connection with the trial court's second hearing of this matter on June 22, 2015, counsel for the parties stipulated that "[a]fter the [first] trial, State Farm issued a check for $941.84 plus legal interest to [Mr. Kimsey's counsel] to compensate him for the void that was there from the $10,000 policy with [NAIC]." Therefore, this assignment of error is moot.

## DECREE

For the reasons set forth above, we affirm the trial court's judgment in this matter. Costs of this appeal are assessed to Plaintiff, Karl Kimsey.

**AFFIRMED.**